**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
DAVID ELLIOT (270381)
*david@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:     (619) 798-2006
Facsimile:     (313) 293-7071

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY WALKER, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> B&G FOODS, INC. and B&G FOODS NORTH AMERICA, INC., <br><br> Defendants. | Case No:_____ <br><br> **COMPLAINT FOR VIOLATIONS OF:** <br><br> **CAL. BUS. & PROF. CODE §§17200** *et seq.***;** <br><br> **CAL. BUS. & PROF. CODE §§17500** *et seq.***;** <br><br> **CAL. CIV. CODE §§ 1750** *et seq.***;** <br><br> **BREACH OF EXPRESS WARRANTIES; AND** <br><br> **BREACH OF IMPLIED WARRANTIES** <br><br> **<u>DEMAND FOR JURY TRIAL</u>** |

## **TABLE OF CONTENTS**

I.  JURISDICTION AND VENUE ...................................................................1

II.  INTRADISTRICT ASSIGNMENT .............................................................1

III.  NATURE OF THE ACTION .....................................................................1

IV.  PARTIES ..................................................................................................2

V.  NATURE OF TRANS FAT ........................................................................3

A.  There is a Well-Established Scientific Consensus That Trans Fat is Extremely Harmful .............4

B.  The Artificial Trans Fat in the Trans Fat Tacos Causes Cardiovascular Disease..........................6

C.  The Artificial Trans Fat in the Trans Fat Tacos Causes Type-2 Diabetes..................................8

D.  The Artificial Trans Fat in the Trans Fat Tacos Causes Breast, Prostate, and Colorectal Cancer .........................................................................9

E.  The Artificial Trans Fat in the Trans Fat Tacos Causes Alzheimer's Disease and Cognitive Decline ...........................................................10

F.  The Artificial Trans Fat in the Trans Fat Tacos Causes Organ Damage ......................................11

G.  Artificial Trans Fat Is So Inherently Dangerous It Has Been Banned by an Increasing Number of American and European Jurisdictions ...........................11

VI.  PLAINTIFF'S PURCHASES OF THE TRANS FAT TACOS ...........................13

VII.  ORTEGA'S "0G TRANS FAT" STATEMENT IS A FALSE, MISLEADING, UNLAWFUL, AND UNAUTHORIZED NUTRIENT CONTENT CLAIM .............................14

VIII.  THE TRANS FAT TACOS UNNECESSARILY CONTAINS PHO AND ARTIFICIAL TRANS FAT ...........................................................14

IX.  DEFENDANTS' PRACTICES ARE "UNFAIR" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW ...........................................15

XI.  RELIANCE AND INJURY ......................................................................17

XII.  DELAYED DISCOVERY ........................................................................18

XIII.  CLASS ACTION ALLEGATIONS ...........................................................19

XIV.  CAUSES OF ACTION.............................................................................21

First Cause of Action .........................................................................21

Second Cause of Action .....................................................................25

Third Cause of Action ........................................................................26

Fourth Cause of Action.......................................................................27

Fifth Cause of Action..........................................................................27

i

Sixth Cause of Action .................................................................................................28

Seventh Cause of Action..............................................................................................29

XV.    PRAYER FOR RELIEF ....................................................................................30

XVI.   JURY DEMAND ...............................................................................................30

XVII.  APPENDIX A: THE TRANS FAT TACOS ..................................................... I

XVIII. APPENDIX- B: LIST OF TRANS FAT FREE TACOS.....................................II

CLASS ACTION COMPLAINT

Plaintiff Troy Walker ("Plaintiff"), on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby sues Defendants B&G Foods, Inc. and B&G Foods North America, Inc. (collectively, "B&G" or "Defendants"), and upon information and belief and investigation of counsel, alleges as follows:

## I.   JURISDICTION AND VENUE

1.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of the class defined herein reside in states other than the states of which Defendants are residents.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff Troy Walker suffered injuries as a result of Defendants' acts in this District; many of the acts and transactions giving rise to this action occurred in this District; and Defendants (1) are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets of this District through the distribution and sale of its products in this District, and (2) is subject to personal jurisdiction in this District.

## II.   INTRADISTRICT ASSIGNMENT

3.      This civil action arises out of the events and omissions of Defendants, which occurred in Alameda County, California. Pursuant to Civil Local Rule 3-2(c), this action should be assigned to the San Francisco or Oakland Division.

## III.   NATURE OF THE ACTION

4.      Defendants manufacture, market, and sell taco shells containing partially hydrogenated oil ("PHO").

5.      Defendants' taco shells containing PHO include two different varieties sold under the label of Ortega (collectively the "Trans Fat Tacos"), more particularly identified in Appendix A hereto.

6.      PHO is a food additive banned in many parts of the world due to its artificial trans fat content.

7.      Artificial trans fat is a toxic carcinogen for which there are many safe and commercially viable substitutes.

1

8.      On June 17, 2015, the FDA determined that PHO is unsafe for use in food. Final Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg. 34650 (June 17, 2015) (hereinafter "FDA Final PHO Determination"). Yet Defendants continue to insert this illegal, dangerous additive into the Trans Fat Tacos, even after the FDA tentatively, and now finally, declared it unsafe for use in food rendering products made with PHO unlawful and adulterated.

9.      Defendants falsely market and falsely represent the Trans Fat Tacos as free of trans fat; however all of the Trans Fat Tacos contain dangerous levels of trans fat.

10.     Although safe, low-cost, and commercially acceptable alternatives to PHO exist, including those used in competing brands, Defendants unfairly elect *not* to use safe alternatives in the Trans Fat Tacos in order to increase their profits at the expense of the health of consumers.

11.     Additionally, Defendants misleadingly market their Trans Fat Tacos with an unauthorized health claim. This false advertising deceives consumers into purchasing a product that is harmful to their health.

12.     Plaintiff Troy Walker repeatedly purchased and consumed the Trans Fat Tacos during the Class Period defined herein.

13.     This action is brought to remedy Defendants' unlawful conduct. On behalf of the class as defined herein, Plaintiff seeks an order compelling Defendants to, *inter alia*: (1) cease marketing and selling the Trans Fat Tacos using the false and unauthorized nutrient content claim "0g trans fat"; (2) conduct a corrective advertising campaign; (3) destroy all misleading and deceptive materials and Products; (4) award Plaintiff and other Class members restitution, actual damages, and punitive damages to the extent permitted under the law; and (5) pay costs, expenses, and reasonable attorneys' fees.

## IV.    PARTIES

14.     Defendant B&G Foods, Inc. is a Delaware corporation with its principal place of business in Parsippany, New Jersey. B&G Foods, Inc. manufactures, distributes, and sells the Trans Fat Tacos.

15.     Defendant B&G Foods North America, Inc. is a Delaware corporation with its principal place of business in Parsippany, New Jersey. B&G Foods North America, Inc. is a subsidiary of B&G

2

Foods, Inc. and owns the trademark for Ortega.

16. Plaintiff Troy Walker repeatedly purchased the Trans Fat Tacos for personal and household consumption in Alameda County, California.

## V.  NATURE OF TRANS FAT

17. Artificial trans fat is a toxic, unlawful food additive manufactured via an industrial process called partial hydrogenation, in which hydrogen atoms are added to normal vegetable oil by heating the oil to temperatures above 400˚F in the presence of ion donor catalyst metals such as rhodium, ruthenium, and nickel.[1] The resulting product is known as partially hydrogenated oil, or PHO, which is the main source of trans fat in the American diet and used in dangerous quantities in the Trans Fat Tacos.

18. PHO was invented in 1901 and patented in 1902 by German chemist Wilhelm Normann. PHO molecules chemically differ from the natural fat molecules in other food products.[2]

19. Natural fat, except the trace amounts of natural trans fat from ruminant animal sources like beef, milk, and mutton, comes in two varieties: (1) fats that lack carbon double bonds ("saturated fat") and (2) fats that have carbon double bonds. Trans fat, in contrast to cis fat, has carbon double bonds with hydrogen atoms on opposite sides of the carbon chain.



20. PHO was initially a "wonder product" attractive to the processed food industry because it combines the low cost of unsaturated cis fat with the flexibility and long shelf life of saturated fat.

---

[1] *See* Alice H. Lichtenstein, *Trans Fatty Acids, Plasma Lipid Levels, and Risk of Developing Cardiovascular Disease*, 95 CIRCULATION 2588, 2588-90 (1997).

[2] *See* Alberto Ascherio et al., *Trans Fatty Acids & Coronary Heart Disease*, 340 NEW ENG. J. MED. 94, 94-8 (1999). *See also* Walter Willett, *The Scientific Case for Banning Trans Fats*, Scientific American, *available at* www.scientificamerican.com/article/the-scientific-case-for-banning-trans-fats/ (last visited June 24, 2015).

Like processed cis fat, PHO is manufactured from low-cost legumes,[3] while saturated fat is derived from relatively expensive animal and tropical plant sources.[4] Given its versatility, ten years ago PHO was used in 40% of processed packaged foods.[5] Now, given its toxic properties, few food companies continue to use PHO. Defendants, however, have decided not to follow their more responsible peers and cease using PHO, instead unfairly placing profits over public health.

21.     As detailed herein, PHO causes cardiovascular heart disease, diabetes, cancer, Alzheimer's disease, and accelerates memory damage and cognitive decline.

**A.    There is a Well-Established Scientific Consensus That Trans Fat is Extremely Harmful**

22.     There is "no safe level" of PHO or artificial trans fat intake.[6]

23.     According to the established consensus of scientists, consumers should keep their consumption of trans fat "as low as possible."[7]

24.     In addition, "trans fatty acids are not essential and provide no known benefit to human health."[8] Thus, while "the [Institute of Medicine] sets tolerable upper intake levels (UL) for the highest level of daily nutrient intake that is likely to pose no risk of adverse health effects to almost all individuals in the general population[,] . . . the IOM does **not** set a UL for trans fatty acid because **any** incremental increase in trans fatty acid intake increases the risk of CHD."[9] (emphasis added).

25.     Today there is no question about the scientific consensus on trans fat. Dr. Julie Louise Gerberding, the long-time head of the United States Centers for Disease Control and Prevention, writes:

---

[3] e.g., corn oil, soybean oil, peanut oil

[4] e.g., butter, cream, tallow, palm, coconut oil

[5] Mary Carmichael, *The Skinny on Bad Fat*, Newsweek, Dec. 1, 2003, at 66. *See also* Kim Severson, *Hidden Killer. It's Trans Fat. It's Dangerous. And It's In Food You Eat Every Day*, S.F. Chron., Jan. 30, 2002.

[6] Food & Nutrition Bd., Inst. of Med., *Dietary Reference Intakes For Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids* (2005).

[7] *Id.*

[8] Food Labeling; Health Claim; Phytosterols and Risk of Coronary Heart Disease; Proposed Rule, 75 Fed. Reg. 76526, 76542 (Dec. 8, 2010)

[9] *Id.*

CLASS ACTION COMPLAINT

The scientific rationale for eliminating exposure to artificial trans fatty acids in foods is rock solid. There is no evidence that they provide any health benefit, and they are certainly harmful. These compounds adversely affect both low- and high-density lipoprotein cholesterol levels and increase the risk for coronary heart disease, even at relatively low levels of dietary intake. Gram for gram, trans fats are far more potent than saturated fats in increasing the risk for heart disease, perhaps because they also have pro-inflammatory properties and other adverse effects on vascular endothelium. The strong evidence of harm motivated the Institute of Medicine to issue recommendations that the intake of trans fats be minimized and prompted the [FDA] to require the addition of information about trans fat content to food labels beginning in 2006. Eliminating exposure to these dangerous fats could have a powerful population impact—potentially protecting 30,000 to 100,000 Americans from death related to heart disease each year.[10]

26. Dariush Mozaffarian of Harvard Medical School writes in the New England Journal of Medicine:

Given the adverse effects of trans fatty acids on serum lipid levels, systemic inflammation, and possibly other risk factors for cardiovascular disease and the positive associations with the risk of CHD, sudden death from cardiac causes, and possibly diabetes, the potential for harm is clear. The evidence and the magnitude of adverse health effects of trans fatty acids are in fact far stronger on average than those of food contaminants or pesticide residues, which have in some cases received considerable attention.[11]

27. Given its nature as an artificial chemical not naturally found in any food and the considerable harm that it causes to human health, Dr. Walter Willet, also at Harvard Medical School,

---

[10] Julie Louise Gerberding, *Safer Fats for Healthier Hearts: The Case for Eliminating Dietary Artificial Trans Fat Intake*, 151 ANN. INTERN. MED. 137-138 (2009)

[11] Dariush Mozaffarian et al., *Trans Fatty Acids and Cardiovascular Disease*, 354 N. ENGL. J. MED. 1601 (2006).

finds the most direct analogue of trans fat to be not any natural fat but contaminants such as pesticides. He states that trans fat "is a food safety issue . . . this is actually contamination."[12]

**B.    The Artificial Trans Fat in the Trans Fat Tacos Causes Cardiovascular Disease**

28.    Trans fat raises the risk of CHD more than any other known nutritive substance.[13]

29.    Removing trans fat equivalent to 2% of total calories from the American diet "would prevent approximately 30,000 premature coronary deaths per year, and epidemiologic evidence suggests this number is closer to 100,000 premature deaths annually."[14]

30.    "10 to 19 percent of CHD events in the United States could be averted by reducing the intake of trans fat."[15]

31.    By raising LDL levels and lowering HDL levels, trans fat causes a wide variety of dangerous heart conditions, including low flow-mediated vasodilation, coronary artery disease, and primary cardiac arrest.

32.    In a joint Dietary Guidelines Advisory Committee Report, the Department of Health and Human Services and the U.S. Department of Agriculture recognized "[t]he relationship between trans fatty acid intake and LDL cholesterol is direct and progressive, increasing the risk of cardiovascular disease."[16]

33.    The American Heart Association warns, "trans fats raise your bad (LDL) cholesterol levels and lower your good (HDL) cholesterol levels. Eating trans fats increases your risk of developing heart disease."[17]

---

[12] Rebecca Coombes, *Trans fats: chasing a global ban*, 343 BRITISH MED. J. (2011).

[13] Mozaffarian, 354 NEW ENG. J. MED. at 1603.

[14] Alberto Ascherio et al., *Trans Fatty Acids & Coronary Heart Disease*, 340 NEW ENG. J. MED. 94, 94-8 (1999).

[15] Mozaffarian, 354 NEW ENG. J. MED. at 1611.

[16] Dep't of Health & Human Serv. & U.S. Dep't of Agric., 2005 Dietary Guidelines Advisory Committee Report, Section 10 (2005).

[17] Am. Heart Ass'n., *Trans Fat Overview*, *available at* www.heart.org/HEARTORG/GettingHealthy/FatsAndOils/Fats101/Trans-Fats_UCM_301120_Article.jsp (last visited June 24, 2015).

34.     After a review of literature on the connection between the consumption of artificial trans fat and coronary heart disease, the FDA concluded:

> [B]ased on the consistent results across a number of the most persuasive types of study designs (i.e., intervention trials and prospective cohort studies) that were conducted using a range of test conditions and across different geographical regions and populations . . . the available evidence for an adverse relationship between trans fat intake and CHD risk is strong.[18]

35.     The FDA further found "[t]o date, there have been no reports issued by authoritive sources that provide a level of trans fat in the diet . . . below which there is no risk of [Coronary Heart Disease]."[19] Rather, there "is a positive linear trend between trans fatty acid intake and LDL cholesterol concentration, and therefore there is a positive relationship between trans fatty acid intake and the risk of CHD."[20]

36.     This evidence of trans fat's gruesome impact on the health of Americans is more than 20 years old. Dr. Walter Willet of Harvard Medical School found in 1994:

> [E]ven the lower estimates from the effects [of PHO] on blood lipids would suggest that more than 30,000 deaths per year may be due to the consumption of partially hydrogenated vegetable fat. Furthermore, the number of attributable cases of nonfatal coronary heart disease will be even larger.[21]

37.     By taking blood samples from 179 survivors of cardiac arrest and 285 randomly-selected control patients and comparing the top fifth with the bottom fifth of participants by trans fat intake, another study published in the American Heart Association's *Circulation* found that the largest consumers of trans fat have three times the risk of suffering primary cardiac arrest, even after

---

[18] Ctr. for Food Safety & Applied Nutrition, U.S. Food & Drug Admin., Questions & Answers About *Trans* Fat Nutrition Labeling.

[19] 75 Fed. Reg. 76526, 76542 (Dec. 8, 2010).

[20] *Id.*

[21] W.C. Willett et al., *Trans Fatty Acids: Are the Effects only Marginal?* 84 AM. J. PUB. HEALTH 722, 723 (1994).

controlling for a variety of medical and lifestyle risk factors.[22]

38. Australian researchers observed that heart attack patients possess elevated amounts of trans fat in their adipose tissue compared to controls, strongly linking heart disease with long-term consumption of trans fat.[23]

39. While cholesterol dysregulation and pro-inflammatory effects are the best-documented pathways through which trans fat causes heart disease and death, another study isolated an additional method by which trans fat causes atherosclerosis, namely by degrading the function of TGF-β, a protein responsible for preventing the development of atherosclerotic lesions.[24]

40. TGF-β also functions to suppress cancerous tumors. The same scientists suggest that the degradation of TGF-β may be the reason that trans fat consumption is strongly linked to multiple forms of cancer.[25]

**C.** **The Artificial Trans Fat in the Trans Fat Tacos Causes Type-2 Diabetes**

41. Artificial trans fat causes type-2 diabetes.[26]

42. In particular, trans fat disrupts the body's glucose and insulin regulation system by incorporating itself into cell membranes, causing the insulin receptors on cell walls to malfunction, and in turn elevating blood glucose levels and stimulating further release of insulin.

43. Researchers at Northwestern University's medical school found mice show multiple markers of type-2 diabetes after eating a high trans fat diet for only four weeks.[27]

---

[22] Rozenn N. Lemaitre et al., *Cell Membrane Trans-Fatty Acids and the Risk of Primary Cardiac Arrest*, 105 CIRCULATION 697, 697-701 (2002).

[23] Peter M. Clifton et al., *Trans Fatty Acids In Adipose Tissue And The Food Supply Are Associated With Myocardial Infarction*. 134 J. NUTR. 874, 874-79 (2004).

[24] Chen, C.L. et al., *A mechanism by which dietary trans fats cause atherosclerosis*, J. of Nut. Biochemistry 22(7) 649-655 (2011).

[25] *Id.*

[26] Am. Heart Ass'n., *Trans Fat Overview*.

[27] Sean W. P. Koppe et al., *Trans fat feeding results in higher serum alanine aminotransferase and increased insulin resistance compared with a standard murine high-fat diet*, 297 AM. J. PHYSIOL. GASTROINTEST LIVER PHYSIOL. 378 (2009).

44.     By the eighth week of the study, mice fed the diet high in trans fat showed a 500% increase compared to the control group in hepatic interleukin-1β gene expression, one such marker of diabetes, indicating the extreme stress even short-term exposure to artificial trans fat places on the body.[28]

45.     A 14-year study of 84,204 women found that for every 2 percent increase in energy intake from artificial trans fat, the relative risk of type-2 diabetes was increased by 39 percent.[29]

**D.      The Artificial Trans Fat in the Trans Fat Tacos Causes Breast, Prostate, and Colorectal Cancer**

46.     Trans fat is a carcinogen which causes breast, prostate, and colorectal cancer.

47.     A 13-year study of 19,934 French women showed 75 percent more women contracted breast cancer in the highest quintile of trans fat consumption than did those in the lowest.[30]

48.     In a 25-year study of 14,916 American physicians, those in the highest quintile of trans fat consumption had more than double the risk of developing prostate cancer than the doctors in the lowest quintile.[31]

49.     A study of 1,012 American males observing trans fat intake and the risk of prostate cancer found "[c]ompared with the lowest quartile of total trans-fatty acid consumption, the higher quartiles gave odds ratios (ORs) equal to 1.58," meaning those in the highest quartile are 58% more likely to contract prostate cancer than those in the lowest.[32]

50.     A 600-person study found an 86 percent greater risk of colorectal cancer in the highest

---

[28] *Id.*

[29] Jorge Salmeron et al., *Dietary Fat Intake and Risk of Type 2 Diabetes in Women*, 73 AM. J. CLINICAL NUTRITION 1019, 1023 (2001).

[30] Véronique Chajès et al., *Association between Serum Trans-Monounsaturated Fatty Acids and Breast Cancer Risk in the E3N-EPIC Study.* 167 AM. J. EPIDEMIOLOGY 1312, 1316 (2008).

[31] Jorge Chavarro et al., *A Prospective Study of Blood Trans Fatty Acid Levels and Risk of Prostate Cancer.*, 47 PROC. AM. ASSOC. CANCER RESEARCH 95, 99 (2006).

[32] Xin Liu et al., *Trans-Fatty Acid Intake and Increased Risk of Advanced Prostate Cancer: Modification by RNASEL R462Q Variant*, 28 CARCINOGENESIS 1232, 1232 (2007).

CLASS ACTION COMPLAINT

trans fat consumption quartile.[33]

51.     A 2,910-person study found "trans-monounsaturated fatty acids . . . were dose-dependently associated with colorectal cancer risk," which showed "the importance of type of fat in the etiology and prevention of colorectal cancer."[34]

**E.     The Artificial Trans Fat in the Trans Fat Tacos Causes Alzheimer's Disease and Cognitive Decline**

52.     Trans fat causes Alzheimer's Disease and cognitive decline.

53.     In a study examining 815 Chicago area seniors, researchers found "increased risk of incident Alzheimer disease among persons with high intakes of . . . trans-unsaturated fats."[35]

54.     The study "observed a strong increased risk of Alzheimer disease with consumption of trans-unsaturated fat."[36]

55.     In a study of 1,486 women with type-2 diabetes, researchers found "[h]igher intakes of . . . trans fat since midlife . . . were [] highly associated with worse cognitive decline . . . ."[37]

56.     The study cautioned "[d]ietary fat intake can alter glucose and lipid metabolism and is related to cardiovascular disease risk in individuals with type-2 diabetes. Because insulin, cholesterol, and vascular disease all appear to play important roles in brain aging and cognitive impairments, dietary fat modification may be a particularly effective strategy for preventing cognitive decline, especially in individuals with diabetes."[38] (citations omitted).

57.     Artificial trans fat also damages the brains of men who consume it. A study conducted

---

[33] L.C. Vinikoor et al., *Consumption of Trans-Fatty Acid and its Association with Colorectal Adenomas*, 168 Am. J. of Epidemiology 289, 294 (2008).

[34] Evropi Theodoratou et al., *Dietary Fatty Acids and Colorectal Cancer: A Case-Control Study*, 166 AM. J. EPIDEMIOLOGY 181 (2007).

[35] Martha Clare Morris et al., *Dietary Fats and the Risk of Incident Alzheimer Disease*, 60 ARCH. NEUROL. 194, 198-199 (2003).

[36] *Id.*

[37] Elizabeth E. Devore et al., *Dietary Fat Intake and Cognitive Decline in Women with Type 2 Diabetes*, 32 DIABETES CARE 635 (2009).

[38] *Id.*

---

10

by UCSD School of Medicine of 1,018 men, mostly younger men, found trans fat consumption to be strongly correlated to impaired memory.[39] The authors of the study, appearing last year in *Circulation*, the American Heart Association's peer-reviewed journal, conclude that "Greater dTFA [dietary trans fatty acid] was significantly associated with worse word memory in adults aged 20-45 years, often critical years for career building."

58.     Performing a word memory test, each additional gram per day of trans fat consumed was associated with 0.76 fewer words correctly recalled. The authors suggest trans fat's well-established pro-oxidant effect and its damage to cell energy processes is the pathway by which trans fat consumption damages memory ability. The young men with the highest trans fat consumption scored 12 fewer recalled words on the 104-word test.[40]

**F.     The Artificial Trans Fat in the Trans Fat Tacos Causes Organ Damage**

59.     Artificial trans fat damages vital organs, including the heart, by causing chronic systemic inflammation, where the immune system becomes persistently overactive, damages cells, and causes organ dysfunction.[41]

**G.     Artificial Trans Fat Is So Inherently Dangerous It Has Been Banned by an Increasing Number of American and European Jurisdictions**

60.     In 2008, California became the first state to ban all restaurant food with artificial trans fat. Trans fats now may not be served in California's schools or restaurants in an amount greater than

---

[39] Golomb, B. et al., *Trans Fat Consumption is Adversely Linked to Memory in Working-Age Adults*, J. of Am. Heart Assoc. 130:A15572 (2014).

[40] *Id.*

[41] *See* Lopez-Garcia *et al.*, *Consumption of Trans Fat is Related to Plasma Markers of Inflammation and Endothelial Dysfunction,* 135 J. Nutr. 562  (2005); *see also* Baer *et al.*, *Dietary fatty acids affect plasma markers of inflammation in healthy men fed controlled diets; a randomized crossover study,* 79 Am. J. Clin. Nutr. 969 (2004); Mozaffarian & Clarke, *Quantitative effects on cardiovascular risk factors and coronary heart disease risk of replacing partially hydrogenated vegetable oils with other fats and oils,* 63 Euro. J. Clin. Nutr. 22 (2009); Mozaffarian et al., *Trans Fatty acids and systemic inflammation in heart failure* 80 Am. J. Clin. Nutr. 1521 (2004).

Class Action Complaint

half a gram per serving, nor contain any ingredient with more than this amount.[42]

61.     New York City banned trans fat in restaurants in 2006. Similar laws exist in Philadelphia, Baltimore, Stamford, Connecticut, and Montgomery County, Maryland.

62.     A 2004 Danish law restricted all foods to fewer than 2 percent of calories from artificial trans fat. Switzerland made the same restriction in 2008.[43]

63.     After conducting a surveillance study of Denmark's 2004 trans fat ban, researchers concluded the change "did not appreciably affect the quality, cost or availability of food" and did not have "any noticeable effect for the consumers."[44]

64.     Similar bans have been introduced in Austria and Hungary. Brazil, Argentina, Chile, and South Africa have all taken steps to reduce or eliminate artificial trans fats from food.[45]

65.     In 2006, a trans fat task force co-chaired by Health Canada and the Heart and Stroke Foundation of Canada recommended capping trans fat content at 2 percent of calories for tub margarines and spreads and 5 percent for all other foods. On September 30, 2009, British Columbia became the first province to impose these rules on all restaurants, schools, hospitals, and special events.[46]

66.     In its European Food and Nutrition Action Plan 2015-2020, the World Health Organization identified one of its goals as "making the European Region trans fat-free."[47] The European Commission is preparing legislation to ban the use of trans fats in 28 nations in the European

---

[42] Cal. Educ. Code § 49431.7; Cal. Health & Saf. Code § 114377.

[43] Andrew Collier, *Deadly Fats: Why Are We still Eating Them?*, The Independent (UK), June 10, 2008.

[44] Mozaffarian, 354 New Eng. J. Med. at 1610; *see also* Stender, Steen, *High Levels of Industrially Produced Trans Fat in Popular Fast Food*, 354 NEW ENG. J. MED. 1650, 1652 (2006); Leth T. *The effect of the regulation on trans fatty acid content in Danish Food*. First Symposium on Trans Fatty Acids and Health, Rungstegaard, Denmark, September 11-13, 2005. Abstract..

[45] Coombes, *Trans fats: chasing a global ban*, 343 BRITISH MED. J. (2011).

[46] *Province Restricts Trans Fat in B.C.*, British Columbia Ministry of Healthy Living and Sport Press Release (2009), *available at* www2.news.gov.bc.ca/news_releases_2005-2009/2009HLS0013-000315.htm (last visited June 24, 2015).

[47] Regional Committee for Europe, *European Food and Nutrition Action Plan 2015-2020*, 64th session.

Union.[48]

67.    Also, on June 17, the FDA released its Final Determination Regarding Partially Hydrogenated Oils, in which it declared "PHOs are not GRAS [Generally Recognized As Safe] for any use in human food."[49]

68.    The FDA will begin filing its own enforcement actions against companies that use PHOs in 2018.

## VI.    PLAINTIFF'S PURCHASES OF THE TRANS FAT TACOS

69.    Plaintiff Troy Walker repeatedly purchased the Trans Fat Tacos during the Class Period defined herein.

70.    Mr. Walker purchased the Trans Fat Tacos a number of times in the past four years from California grocery stores, including the Safeway located at 1499 Washington Ave, San Leandro, CA 94577, his most recent purchase being in approximately January or February 2015.

71.    He has been purchasing the Trans Fat Tacos for many years.

72.    Plaintiff Walker first discovered Defendants' unlawful acts described herein in April 2015, when he learned that the Trans Fat Tacos products contained artificial trans fat, and caused heart disease, diabetes, cancer, and death.

73.    Plaintiff, in the exercise of reasonable diligence, could not have discovered earlier Defendants' unlawful acts described herein because the association between PHO and trans fat and the details of the dangers of artificial trans fats were known to Defendants, but not to Plaintiff, throughout the Class Period defined herein. Plaintiff is not a nutritionist, food expert, or food scientist, but rather a lay consumer who did not have the specialized knowledge that Defendants have which otherwise would have enabled him to associate PHO with artificial trans fat, and artificial trans fat with disease.

74.    Even today the nature and extensive utilization of artificial trans fats—including that they necessarily exist where partially hydrogenated oil is used an ingredient in a food product—is

---

[48] Basu, J. *European trans fat report 'could lead to ban'*, Food Navigator.com, April 15, 2015.

[49] FDA Final PHO Determination, 80 Fed. Reg. 34650, 34651 (June 17, 2015).

CLASS ACTION COMPLAINT

generally unknown to the average consumer. Moreover, he relied on Defendants' "0g trans fat" claim as a substantial factor in his purchases.

75. Plaintiff would not have purchased these Products absent this advertisement.

76. Because Plaintiff expected this statement to be true and honest when it is in fact false and misleading, he did not receive the benefit of his purchases. Instead of receiving the benefit of products free of trans fat, he received products that contained trans fat.

77. Plaintiff intends to, desires to, and will purchase the Trans Fat Tacos when he is able to do so with the assurance it will be free of PHO and not contain unauthorized nutrient content claims

## VII. ORTEGA'S "0g Trans Fat" STATEMENT IS A FALSE, MISLEADING, UNLAWFUL, AND UNAUTHORIZED NUTRIENT CONTENT CLAIM

78. During the Class Period, the Trans Fat Taco products were made with PHO yet contained the deceptive health and wellness claim "0g Trans Fat!" prominently displayed on the front of the products' packaging. Exemplary photos of the packaging of the product are attached hereto with Appendix A.

79. **Misleading "0g Trans Fat!" claims:** During the Class Period, Defendants marketed the Trans Fat Tacos products with the claim "0g Trans Fat!" prominently displayed on the front of the products' packaging.

80. This language was part of an intentional campaign to deceptively market the Trans Fat Tacos products as healthful.

81. Defendants' conduct is especially egregious because taco shells, a classic Tex-Mex staple, normally contain no trans fat and do not pose the serious health consequences associated with the Trans Fat Tacos.

## VIII. THE TRANS FAT TACOS UNNECESSARILY CONTAINS PHO AND ARTIFICIAL TRANS FAT

82. Defendants' use of PHO in the Trans Fat Tacos is unnecessary. There are several safe substitutes for PHO and artificial trans fat.

83. Several manufacturers of competing taco products have responsibly decided to refrain from adding artificial trans fat to their products. Such brands sold in the United States include Old El

14

Paso, Mission, and Bearitos, among others. A list of such products including specific varieties is identified in Appendix B hereto.

84. Although commercially viable alternative formulations and substitutes for PHO were and are available, Defendants elect not to use them in the Trans Fat Tacos in order to increase their profits.

## IX. DEFENDANTS' PRACTICES ARE "UNFAIR" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW

85. Defendants' practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because their conduct is immoral, unethical, unscrupulous, and substantially injurious to consumers, and the utility of the conduct to Defendants does not outweigh the gravity of the harm to Defendants' victims.

86. Plaintiff's claims for unfair business practices are independent of his claim for false advertising. Even absent Defendants' false advertising, the sale of the Trans Fat Tacos violates the UCL and implied warranty of merchantability, as well as state and federal laws prohibiting the sale of adulterated food.

87. In particular, while Defendants' use of PHO in the Trans Fat Tacos may have some utility in that it allows Defendants to realize higher profit margins than if they used safe alternatives, this utility is small and far outweighed by the gravity of the serious health harm B&G inflicted upon consumers.

88. Defendants' conduct injures competing manufacturers of taco shells that do not engage in its unlawful, unfair, and immoral behavior, especially given Defendants' large market share and the limited shelf space in retailers' packaged food sections.

89. Moreover, Defendants' practices violate public policy expressed by specific constitutional, statutory, or regulatory provisions, including the California Health and Safety Code § 114377 and California Education Code § 49431.7.

90. Defendants' actions also violate public policy by causing the United States, California, and every other state to pay—via Medicare, Medicaid, Affordable Care Act Exchange subsidies, veterans' health programs, public employee and retiree health insurance—for treatment of trans fat-

15

related illnesses.

91. Further, the injury to consumers from Defendants' practices is substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

## X. DEFENDANTS' PRACTICES ARE "UNLAWFUL" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW

92. Defendants' practices as described herein are "unlawful" within the meaning of the California Unfair Competition Law because PHO is not Generally Recognized as Safe (GRAS). Therefore, Defendants' use of PHO renders its products adulterated within the meaning of 21 U.S.C. § 342(a)(2)(C).

93. The PHO used in the Trans Fat Tacos appears nowhere on the FDA's list of the hundreds of substances it considers GRAS.[50]

94. PHO also fails to meet the fundamental requirement for GRAS status—that the substance is safe. In fact, the FDA has explicitly recognized that there is no safe level of artificial trans fat consumption.

95. Under the Food Additives Amendment of 1958, which amended the FDCA, all food additives are unsafe unless they (1) fall within a specified exemption to the statute's definition of food additive, or (2) their use is pursuant to FDA approval. Because the PHO used in the Trans Fat Tacos do not meet either of these exceptions, they are, and long have been, unsafe and unlawful for use in food.

96. Defendants' use of PHO in the Trans Fat Tacos thus constitutes adulteration under 21 U.S.C. § 342.

97. On November 8, 2013, the FDA tentatively determined PHO is not GRAS.[51]

98. On June 17, 2015, after extensive public comment, the FDA determined trans fat is not

---

[50] *See* 21 C.F.R. §§ 181, 182, 184, and 186.

[51] 78 Fed. Reg. 67169 (November 8, 2013).

GRAS.[52]

99. At no point during the class period was there a scientific consensus PHO was safe. Indeed, for more than two decades, the scientific consensus has been that it is unsafe.

## XI. RELIANCE AND INJURY

100. When purchasing the Trans Fat Tacos, Plaintiff was seeking products of particular qualities, including products that did not negatively affect blood cholesterol levels or the health of his cardiovascular system, and products made with safe, lawful ingredients.

101. Plaintiff purchased the Trans Fat Tacos believing they had the qualities he sought based on the Products' deceptive labeling, and the natural assumption that food sold in stores by large companies would not have unsafe and unlawful ingredients.

102. Instead, they were actually unsatisfactory to him for the reasons described herein.

103. Plaintiff lost money as a result of Defendants' conduct because he purchased products that were detrimental to his health and were unfairly offered for sale in violation of federal and California law. Had Defendants not violated the law, Plaintiff would not have been able to purchase the Trans Fat Tacos.

104. Plaintiff suffered physical injury when he repeatedly consumed Defendants' Trans Fat Tacos, because consuming artificial trans fat in *any* quantity, including the quantity he actually consumed, inflames and damages vital organs and increases the risk of heart disease, diabetes, cancer, and death.

105. The Trans Fat Tacos cost more than similar products without the misleading labeling, and would have cost less, for example demanded less in the marketplace, absent Defendants' false and misleading statements and material omissions. Thus, the Trans Fat Tacos were worth less than what Plaintiff paid for it.

106. The Trans Fat Tacos are not fit for human consumption and have a value of $0.

---

[52] 80 Fed. Reg. 34650 (June 17, 2015).

107.    Plaintiff, on one or more occasions, would not have purchased the Trans Fat Tacos absent Defendants' misrepresentations.

108.    Plaintiff purchased the Trans Fat Tacos instead of competing products based on the false statements and misrepresentations described herein.

109.    Like most consumers, Mr. Walker is a busy person and cannot reasonably inspect every ingredient of every food that he purchases for himself and others, and he was unaware that the Trans Fat Tacos were dangerous when he purchased them.

110.    Plaintiff is not a nutritionist, food expert, or food scientist, but rather a lay consumer who did not have the specialized knowledge of Defendants of trans fat. Even today, the details of the dangers of artificial trans fats are unknown to millions of Americans.

111.    Plaintiff lost money as a result of Defendants' unlawful behavior. Plaintiff altered his position to his detriment and suffered loss in an amount equal to the amount he paid for the Trans Fat Tacos.

## XII.    DELAYED DISCOVERY

112.    Plaintiff did not discover that Defendants' labeling of the Products was false, deceptive, or misleading until April 2015, when he learned that the Trans Fat Tacos contains artificial trans fat and that foods high in artificial trans fat—such as the Trans Fat Tacos—are harmful to human health in any quantity because of their role in causing coronary heart disease, type-2 diabetes, and cancer. Until this time, he lacked the knowledge regarding the facts of his claims against Defendants.

113.    Plaintiff is a reasonably diligent consumer who exercised reasonable diligence in his purchase, use, and consumption of the Products. Nevertheless, he would not have been able to discover Defendants' deceptive practices and lacked the means to discover them given that, like nearly all consumers, he is not an expert on nutrition and does not typically read or have ready access to scholarly journals such as The Journal of Nutrition,[53]  The European Journal of Clinical Nutrition,[54] and The New

---

[53] Peter M. Clifton et al., *Trans Fatty Acids In Adipose Tissue And The Food Supply Are Associated With Myocardial Infarction*, 134 J. Nutr. 874, 874-79 (2004).

England Journal of Medicine,[55] where the scientific evidence of artificial trans fat's dangers has been published. Furthermore, Defendants' labeling practices—in particular, representing the Trans Fat Tacos as having "0g trans fat"—actively impeded Plaintiff's and the Class' abilities to discover the dangerous effects of the Products throughout the Class Period.

## XIII.  CLASS ACTION ALLEGATIONS

114.  Plaintiff brings this action on behalf of himself and all others similarly situated (the "Class"), excluding Defendants' officers, directors, and employees, and the Court, its officers and their families.

115.  The Class is defined as follows:

All persons who purchased in the United States, on or after January 1, 2008, for household or personal use, the Ortega taco products manufactured or distributed by B&G Foods, Inc. or B&G Foods North America, Inc.

116.  The Fraud Sub-Class is defined as follows:

All persons who purchased in the United States, on or after January 1, 2008, for household or personal use, the Ortega taco products manufactured or distributed by B&G Foods, Inc. or B&G Foods North America, Inc. containing the labeling claim "0g Trans Fat!"

117.  Questions of law and fact common to Plaintiff and the Class include:

a.  Whether Defendants communicated a health and wellness message through the Trans Fat Tacos' packaging;

b.  Whether that message was material, or likely to be material, to a reasonable consumer;

---

[54] A. Tavani et al., *Margarine intake and risk of nonfatal acute myocardial infarction in Italian women*, 51 Eur. J. Clin. Nutr. 30–32 (1997) (estimating a 50 percent greater risk of heart attack in women with high consumption of margarine, an association "independent of body mass index, history of hypertension and hyperlipidemia").

[55] Mozaffarian, 354 New Eng. J. Med. at 1611 ("10 to 19 percent of CHD events in the United States could be averted by reducing the intake of trans fat").

CLASS ACTION COMPLAINT

c.      Whether that message was false, at variance with the truth, misleading, likely to deceive, and/or had the capacity to deceive the public and/or a reasonable consumer;

d.      Whether Defendants fraudulently omitted material information in advertising the Trans Fat Tacos as healthy;

e.      Whether the class is entitled to actual damages, restitution, rescission, punitive damages, attorneys' fees and costs, injunctive, and/or any other relief;

f.      Whether any applicable statute of limitations should be tolled on behalf of the Class;

g.      Whether Defendants' conduct constitutes violations of California's False Advertising Law;

h.      Whether Defendants' conduct was immoral, unscrupulous or offensive of public policy because Defendants advertised the Trans Fat Tacos to people deliberately seeking a healthy option despite knowing of the dangers from its artificial trans fat content;

i.      Whether Defendants' conduct constitutes a violation of the California CLRA;

j.      Whether Defendants' conduct constitutes a violation of the unlawful prong of California's Unfair Competition Law;

118.     By purchasing the Trans Fat Tacos, all Class members were subjected to the same wrongful conduct.

119.     Plaintiff's claims are typical of the Class' claims because all Class members were subjected to the same unlawful, unfair, and deceptive conduct when they purchased the Trans Fat Tacos and suffered economic injury.

120.     Plaintiff will fairly and adequately protect the interests of the Class, has no interests that are incompatible with the interests of the Class, and has retained counsel competent and experienced in class litigation.

121.    The Class is sufficiently numerous, as it includes hundreds of thousands of individuals, if not millions, who purchased the Trans Fat Tacos throughout the United States during the Class Period.

122.    Class representation is superior to other options for the resolution of the controversy. The relief sought for each Class member is small, as little as two or three dollars for some Class members. Absent the availability of class action procedures, it would be infeasible for Class members to redress the wrongs done to them.

123.    Defendants have acted on grounds applicable to the Class, thereby making final injunctive relief or declaratory relief appropriate concerning the Class as a whole.

124.    Questions of law and fact common to the Class predominate over any questions affecting only individual members.

125.    Class treatment is appropriate under Fed. R. Civ. P. 23(a) and both Fed. R. Civ. P. 23(b)(2) and 23(b)(3). Plaintiff will, if notice is required, confer with Defendants and seek to present the Court with a stipulation and proposed order on the details of a class notice plan.

## XIV.    CAUSES OF ACTION

### First Cause of Action

### California Unfair Competition Law, Unlawful Prong

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

126.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

127.    Defendants have made and distributed, in interstate commerce and in this District, products that make false or misleading statements of fact regarding their content. The Trans Fat Tacos was placed into interstate commerce by Defendants and sold throughout the country and in this District.

128.    Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

129.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants as alleged herein constitute "unlawful" business acts and practices in that Defendants' conduct violates the California False Advertising Law, and the California Consumer Legal Remedies Act, as alleged herein.

130.    Defendants' conduct is further "unlawful" because it violates § 43(a) the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' advertising constitutes false statements of fact in interstate commerce about its own and other products, which were material in that they were likely to influence consumers' purchasing decisions, and which had a tendency to deceive, or actually deceived a substantial segment of Defendants' audience, resulting in injury.

131.    Defendants' conduct is further "unlawful" because it violates the Federal Food, Drug and Cosmetic Act ("FDCA"), specifically,

- 21 U.S.C. § 331(a) (prohibiting the "introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded");

- 21 U.S.C. § 331(b) (prohibiting the "adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce");

- 21 U.S.C. § 331(c) (prohibiting the "receipt in interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise");

- 21 U.S.C. § 331(g) (prohibiting the "giving of a guaranty or undertaking . . .  which guaranty or undertaking is false");

- 21 U.S.C. § 331(k) (prohibiting the "alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect to, a food, drug, device, tobacco product, or cosmetic, if such act is done while such article is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being adulterated or misbranded");

- 21 U.S.C. § 342(a) (which deems any food adulterated if it "contains any poisonous or deleterious substance which may render it injurious to health");

- 21 U.S.C. § 343(a) (which deems food misbranded when the label contains a statement that is "false or misleading in any particular");

- 21 U.S.C. § 348 (prohibiting the use of any food additive unless it has been deemed GRAS);

22

- 21 C.F.R. § 101.13(i)(3) (which bars nutrient content claims voluntarily placed on the front of a product label that are "false or misleading in any respect.")

132. Defendants further violate the FDCA's implementing regulation, 21 C.F.R. § 1.21, because the Trans Fat Tacos' packaging fails to reveal material facts, namely the dangers of PHO described in detail herein, "in light of other representations," namely the "0g Trans Fat" claim described herein as misleading.

133. Defendants 'conduct further violates The California Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 110660, which deems food products "misbranded" if their labeling is "false or misleading in any particular," and Health & Safety Code § 110670, which bars nutrient content claims voluntarily placed on the front of a product label that fail to comply with the federal regulation for nutrient content claims (i.e., "may not be false or misleading in any respect").

134. Defendants' conduct also violates the following sections of the Sherman Law:

- § 110100 (adopting all FDA food labeling regulations as state regulations);

- § 110290 ("In determining whether the labeling or advertisement of a food . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these shall be taken into account. The extent that the labeling or advertising fails to reveal facts concerning the food . . . or consequences of customary use of the food . . . shall also be considered.");

- § 110390 ("It is unlawful for any person to disseminate any false advertisement of any food . . . . An advertisement is false if it is false or misleading in any particular.");

- § 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised.");

- § 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

- § 110400 ("It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . .");

- § 110670 ("Any food is misbranded if its labeling does not conform with the requirements

23

for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto.");

- § 110680 ("Any food is misbranded if its labeling or packaging does not conform to the requirements of Chapter 4 (commencing with Section 110290).");

- § 110705 ("Any food is misbranded if any word, statement, or other information required pursuant to this part to appear on the label or labeling is not prominently placed upon the label or labeling and in terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.");

- § 110760 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.");

- § 110765 ("It is unlawful for any person to misbrand any food."); and

- § 110770 ("It is unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.").

135.    Defendants' conduct violates additional provisions of the Sherman Law.

136.    All of the challenged labeling statements made by Defendants thus constitute violations of the FDCA and the Sherman Law and, as such, violated the "unlawful" prong of the UCL.

137.    Defendants leveraged their deception to induce Plaintiff and members of the Class to purchase products that were of lesser value and quality than advertised.

138.    Plaintiff suffered injury in fact and lost money or property as a result of Defendants' deceptive advertising: he was denied the benefit of the bargain when he decided to purchase the Products over competitor products that are less expensive and/or contain no artificial trans fat.

139.    Had Plaintiff been aware of Defendants' false and misleading advertising tactics, he would not have purchased the Products, and had Defendants not advertised them in a fraudulent manner, he would have paid less for them.

140.    In accordance with Cal. Bus. & Prof Code § 17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign. Plaintiff intends to purchase the Products in the future when Defendants cease their unfair business practices and remove trans fat.

141.    Plaintiff also seeks an order for the restitution of all monies from the sale of the Products which were acquired through acts of unlawful, unfair, and/or fraudulent competition.

142.    Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Trans Fat Tacos, which were acquired through acts of unfair competition.

## Second Cause of Action

### California Unfair Competition Law, Fraudulent Prong

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

143.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

144.    Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

145.    Defendants leveraged their deception to induce Plaintiff and members of the Class to purchase products that were of lesser value and quality than advertised.

146.    Plaintiff suffered injury in fact and lost money or property as a result of Defendants' deceptive advertising: he was denied the benefit of the bargain when he decided to purchase the Trans Fat Tacos over competitor products, which are less expensive and/or contain no artificial trans fat.

147.    Had Plaintiff been aware of Defendants' false and misleading advertising tactics, he would not have purchased the Trans Fat Tacos, and had Defendants not advertised them in a fraudulent manner, Plaintiff would have paid less for them.

148.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants as alleged herein constitute "fraudulent" business acts and practices in that Defendants' conduct has a likelihood, capacity or tendency to deceive Plaintiff, the Class, and the general public.

149.    In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

150.    Plaintiff further seeks an order for the restitution of all monies from the sale of the Products which were acquired through acts of unlawful, unfair, and/or fraudulent competition.

### Third Cause of Action

### California Unfair Competition Law, Unfair Prong

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

151.　Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

152.　Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

153.　Defendants leveraged their deception to induce Plaintiff and members of the Class to purchase products that were of lesser value and quality than advertised.

154.　Plaintiff suffered injury in fact and lost money or property as a result of Defendants' deceptive advertising: he were denied the benefit of the bargain when he decided to purchase the Trans Fat Tacos over competitor products, which are less expensive and/or contain no artificial trans fat.

155.　Had Plaintiff been aware of Defendants' false and misleading advertising tactics, he would not have purchased the Trans Fat Tacos, and had Defendants not advertised it in a fraudulent manner, Plaintiff would have paid less for them.

156.　The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants as alleged herein constitute "unfair" business acts and practices because Defendants' conduct is:

　　a.　immoral, unethical, unscrupulous, and offends public policy;

　　b.　the gravity of Defendants' conduct outweighs any conceivable benefit of such conduct; and

　　c.　the injury to consumers caused by Defendants' conduct is substantial, not outweighed by any countervailing benefits to consumers or competition, and not one that consumers themselves could reasonably have avoided.

157.　In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

158.　Plaintiff further seeks an order for the restitution of all monies from the sale of the Trans Fat Tacos which were acquired through acts of unlawful, unfair, and/or fraudulent competition.

**Fourth Cause of Action**

**California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq*.**

159. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

160. In violation of Cal. Bus. & Prof. Code §§ 17500 *et seq*., the advertisements, labeling, policies, acts, and practices described herein were designed to, and did, result in the purchase and use of the Trans Fat Tacos without the knowledge that they contained harmful amounts of toxic artificial trans fat.

161. Defendants knew that the labels on the Trans Fat Tacos were untrue and misleading.

162. As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

**Fifth Cause of Action**

**California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*.**

163. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

164. The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

165. Defendants' policies, acts and practices were designed to, and did, result in the purchase and use of the Products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

    a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

    b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

    c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

    d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

166. As a result, Plaintiff and the Class have suffered irreparable harm and are entitled to injunctive relief and restitution.

167. As a further result, Plaintiff and the Class have suffered damages, and because the conduct was deliberate, immoral, oppressive, made with malice and/or contrary to public policy, they are entitled to punitive or exemplary damages.

168. In compliance with Civ. Code § 1782, Plaintiff sent Defendants written notice of his claims on April 21, 2015.

169. Pursuant to section 1782 *et seq.* of the CLRA, Plaintiff notified Defendants in writing by certified mail of the particular violations of § 1770 of the Act as to the Products and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act. Defendants' wrongful business practices regarding the Products constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendants are still representing that the Products have characteristics, uses, benefits, and abilities which are false and misleading, and have injured Plaintiff and the Class.

170. Defendant B&G Foods, Inc. received Plaintiff's written notice on April 29, 2015.

171. Defendant B&G Foods North America, Inc. received Plaintiff's written notice on April 29, 2015.

### Sixth Cause of Action

### Breach of Express Warranty

172. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

173. During the class period, Defendants made written representations to the public, including Plaintiff, by their advertising and packaging that the Trans Fat Tacos contain "0g Trans Fat."

174. These promises and related promises printed on the label became part of the basis of the bargain between the parties and thus constituted an express warranty.

175. Thereon, Defendants sold the goods to Plaintiff and other consumers who bought the goods from Defendants.

176.     However, Defendants breached this express warranty in that the Trans Fat Tacos do not contain "0g Trans Fat!" because they contain partially hydrogenated oil which necessarily contains artificial trans fat.

177.     As a result of this breach, Plaintiff and other consumers in fact did not receive goods as warranted by Defendants.

178.     As a proximate result of this breach of warranty by Defendants, Plaintiff and other consumers have been damaged in an amount to be determined at trial.

**Seventh Cause of Action**

**Breach of Implied Warranty of Merchantability**

179.     Plaintiff realleges, and incorporates by reference each and every allegation contained elsewhere in this Complaint, as if fully set forth herein.

180.     Defendant, through its acts and omissions set forth herein, in the sale, marketing and promotion of the Products, made representations to Plaintiff and the Class, on the Products' labels, that the Products contained no trans fat.

181.     Plaintiff and the Class bought the Products manufactured, advertised, and sold by Defendant, as described herein.

182.     Defendants are merchants with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was in the sale to Plaintiff and other members of the Class an implied warranty that those goods were merchantable.

183.     Defendants breached that implied warranty, however, in that the Products are not fit for their ordinary purpose and do not conform with the representations on their labels, as set forth in detail herein.

184.     As an actual and proximate result of Defendants' conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendants to be merchantable in that they did not conform to the promises and affirmations made on the container or label of the goods.

185.     Plaintiff and Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Products' purchase price.

## XV.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against Defendants as follows:

A.   An order confirming that this class action is properly maintainable as a nationwide class action as defined above, appointing Plaintiff and his undersigned counsel to represent the Class, and requiring Defendants to bear the cost of class notice;

B.   Where authorized by law and referenced in this Complaint, an order requiring Defendants to pay damages to Plaintiff and class members so that they may be restored any money which may have been acquired by means of any unfair, deceptive, unconscionable, fraudulent, or negligent action;

C.   An order requiring Defendants to disgorge any benefits received from Plaintiff and/or unjust enrichment realized as a result of its improper and misleading advertising and marketing of the Trans Fat Tacos;

D.   An order declaring the conduct complained of herein violates the Unfair Competition Law;

E.   An order requiring Defendants to pay restitution and damages to Plaintiff and Class members so that they may be restored any money which was acquired by means of any unfair, deceptive, unconscionable, fraudulent, or negligent acts;

F.   An award of punitive damages, in an amount to be proven at trial;

G.   An order enjoining Defendants' deceptive, unconscionable and fraudulent practices;

H.   An order requiring Defendants to engage in a corrective advertising campaign;

I.   An award of pre-judgment and post-judgment interest;

J.   An award of attorneys' fees and costs; and

K.   Such other and further relief as this Court may deem just, equitable or proper.

## XVI.   JURY DEMAND

Plaintiff demands a trial by jury on his claims for damages. He does not seek a jury trial for his claims in equity.

CLASS ACTION COMPLAINT

1    DATED: August 18, 2015                    Respectfully Submitted,

2

3                                              /s/ Gregory S. Weston
                                               **THE WESTON FIRM**
4                                              GREGORY S. WESTON
                                               DAVID ELLIOT
5                                              1405 Morena Blvd., Suite 201
                                               San Diego, CA 92110
6                                              Telephone:    (619) 798-2006
                                               Facsimile:    (313) 293-7071
7
                                               ***Counsel for Plaintiff***
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

# XVII.     Appendix A: The Trans Fat Tacos

- Ortega White Corn Taco Shells
- Ortega Yellow Corn Taco Shells







CLASS ACTION COMPLAINT

## XVIII.     Appendix- B: List of Trans Fat Free Tacos

- Old El Paso distributed by General Mills including all of the following varieties:
  - o   Extra Large Super Stuffer Taco Shells
  - o   Stand 'n Stuff Taco Shells
  - o   Crunchy Taco Shells

- Mission manufactured by Gruma including all of the following varieties:
  - o   Taco Shells gluten free

- Bearitos distributed by the Hain Celestial Group, Inc. including all of the following varieties:
  - o   Yellow Corn Taco Shells
  - o   Blue Corn Taco Shells