1

2

3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY WALKER,<br><br>        Plaintiff,<br><br>    v.<br><br>B&G FOODS, INC., et al.,<br><br>        Defendants. | Case No. 15-cv-03772-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND STAYING REMAINING CLAIMS**<br><br>Re: ECF No. 14 |

Before the Court is Defendants' Motion to Dismiss.  ECF No. 14.  For the reasons set forth below, the motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiff Troy Walker brings this suit challenging Defendants B&G Foods, Inc.'s and B&G Foods North America, Inc.'s (collectively, "Defendants") marketing and sales of taco shells that contain partially hydrogenated oils ("PHOs").  Plaintiff "repeatedly purchased" Defendant's taco shell for many years, most recently in January or February, 2015.  ECF No. 1 ¶ 69–70.  Plaintiff allegedly "suffered physical injury when he repeatedly consumed Defendants' [taco shells] because consuming artificial trans fat," which is a component of PHOs, "in *any* quantity . . . inflames and damages vital organs and increases the risk of heart disease, diabetes, cancer, and death."  Id. ¶ 104.

According to Plaintiff, Defendants' taco shells "were made with PHO yet contained the deceptive health and wellness claim '0g Trans Fat!' prominently displayed on the front of the products' packaging."  Id. ¶ 78, Appendix A.  Plaintiff first discovered Defendants' allegedly unlawful acts "in April 2015, when he learned that [Defendants' taco shells] contained artificial trans fat."  Id. ¶ 72.  Before this time, Plaintiff allegedly was unaware that Defendants' taco shells included trans fat, id. ¶ 112, despite the fact that the packaging in which the taco shells were sold

1    listed "Partially Hydrogenated Soybean Oil" as an ingredient.  Id., Appendix A.  According to

2    Plaintiff, he could not have discovered Defendants' allegedly unlawful conduct earlier "because

3    the association between PHO and trans fat" and the dangers of consuming trans fat "were known

4    to Defendants, but not to Plaintiff," who "is not a nutritionist, food expert, or food scientist."  Id.

5    ¶¶ 73, 110.

6         Plaintiff filed this putative class action on August 18, 2015, asserting seven claims:

7    (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, "Unlawful

8    Prong"; (2) violation of California's Unfair Competition Law, "Fraudulent Prong"; (3) violation of

9    California's Unfair Competition Law, "Unfair Prong"; (4) violation of California's False

10   Advertising Law, Cal. Bus. & Prof. Code  § 17500; (5) violation of California's Consumer Legal

11   Remedies Act, Cal. Civ. Code § 1750; (6) Breach of Express Warranty; and (7) Breach of Ithe

12   mplied Warranty of Merchantability.

13        This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

14   II.    **LEGAL STANDARD**

15        **A. Standing**

16        In resolving a challenge to the adequacy of jurisdictional allegations in a complaint, courts

17   assume that the allegations in the complaint are true, and draw all reasonable inferences in the

18   plaintiff's favor.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).  To

19   establish Article III standing, plaintiffs must satisfy three elements: (1) "injury in fact—an

20   invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or

21   imminent, not conjectural or hypothetical"; (2) causation—"there must be a causal connection

22   between the injury and the conduct complained of—the injury has to be fairly traceable to the

23   challenged action of the defendant, and not the result of the independent action of some third party

24   not before the court; and (3) redressability—"it must be likely, as opposed to merely speculative,

25   that the injury will be redressed by a favorable decision."  Lujan v. Defenders of Wildlife, 504

26   U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted).  If, viewing the

27   allegations in the light most favorable to plaintiff, the Court finds that a plaintiff's claim does not

28   meet the Article III case-or-controversy requirement, and therefore that the plaintiff does not have

United States District Court
Northern District of California

2

1    standing to bring the claim, the Court must dismiss the claim for lack of jurisdiction.  See Steel

2    Co. v. Citizens for a Better Env't, 523 U.S. 83, 101–04 (1998).

3            **B. Motion to Dismiss**

4            On a motion to dismiss, the Court accepts the material facts alleged in the complaint,

5    together with all reasonable inferences to be drawn from those facts, as true.  Navarro v. Block,

6    250 F.3d 729, 732 (9th Cir. 2001).  However, "the tenet that a court must accept a complaint's

7    allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported

8    by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  To be entitled to

9    the presumption of truth, a complaint's allegations "must contain sufficient allegations of

10   underlying facts to give fair notice and to enable the opposing party to defend itself

11   effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

12           To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to

13   relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

14   Plausibility does not mean probability, but it requires "more than a sheer possibility that a

15   defendant has acted unlawfully." Iqbal, 556 U.S. at 687.  "A claim has facial plausibility when the

16   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

17   defendant is liable for the misconduct alleged."  Id.  In the Ninth Circuit, "[i]f there are two

18   alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of

19   which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).

20   Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is

21   so convincing that plaintiff's explanation is implausible."  Starr, 652 F.3d at 1216 (emphasis in

22   original).

23           **C. Primary Jurisdiction**

24           The doctrine of primary jurisdiction applies in a "limited set of circumstances."  Clark v.

25   Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008).  It permits courts to stay proceedings, or

26   to dismiss a complaint without prejudice, pending the resolution of an issue within the "special

27   competence of an administrative agency."  Id.  The doctrine is prudential; it applies when "a court

28   determines that an otherwise cognizable claim implicates technical and policy questions that

United States District Court
Northern District of California

3

should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." Id. A court's decision to invoke the primary jurisdiction doctrine "does not indicate that it lacks jurisdiction." Id.

## III.   ANALYSIS

Plaintiff's claims can be divided into mislabeling claims and use claims. Plaintiff's mislabeling claims (claims I, II, IV, V, and VI) allege that Defendants' taco shells were mislabeled because the packaging stated "0g Trans Fat!" when, in fact, Defendants' taco shells contained trans fat. Plaintiff's use claims (claims III and VII)[1] contend that the inclusion of trans fat in Defendants' taco shells renders them "not fit for their ordinary purpose" and that the harm caused by the inclusion of trans fat in the taco shells "outweighs any conceivable benefit of such conduct." ECF No. 1 ¶¶ 156, 183.

The Court will first address whether Plaintiff's mislabeling claims are preempted by federal law. Next, the Court will determine whether Plaintiff has standing to bring his use claims. Finally, the Court will discuss whether this case should be stayed under the primary jurisdiction doctrine.

### A. Preemption

Defendants argue that Plaintiff's mislabeling claims are preempted by the federal Food, Drug and Cosmetic Act ("FDCA"), as amended by the Nutrition Labeling and Education Act ("NLEA"). The NLEA "amended the [FDCA] to establish uniform food labeling requirements, including the familiar and ubiquitous Nutrition Facts Panel found on most food packages." Reid v. Johnson & Johnson, 780 F.3d 952, 959 (9th Cir. 2015). Of particular relevance here, the Food and Drug Administration ("FDA") has promulgated regulations pursuant to the NLEA requiring a product's Nutrition Facts Panel to express the amount of trans fat per serving as zero if a product contains 0.5 grams of trans fat per serving or less. 21 C.F.R. § 101.9(c)(2)(ii) ("If the serving

---

[1] Plaintiff's Opposition brief states: "Aside from his fraud/labeling claims, Plaintiff also asserts an entirely separate theory for UCL relief. He alleges the *use* of trans fat, when safe alternatives are available and commercially viable, . . . is an unfair business practice prohibited by the Unfair Competition Law's 'unfair' prong and a breach of implied warranty of merchantability." ECF No. 21 at 13 (emphasis in original).

United States District Court
Northern District of California

4

contains less than 0.5 gram[s] [of trans fat], the content, when declared, shall be expressed as zero.").

The NLEA also regulates food labeling outside of the Nutrition Facts Panel.  Section 343(r) regulates information anywhere on a food package that "expressly or by implication . . . characterizes the level of any nutrient . . . ." 21 U.S.C. § 343(r).  FDA regulations, in turn, provide that a food product label "may contain a statement about the amount or percentage of a nutrient if . . . [t]he statement does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect . . . ." 21 C.F.R. § 101.13(i)(3).  The NLEA also provides that no State "may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement respecting any claim of the type described in section 343(r)(1) of this title, made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title . . . ." 21 U.S.C. § 343-1(a)(5).

According to Defendants, allowing Plaintiff's state law mislabeling claims to proceed would impose a requirement "not identical to the requirement of section 343(r)" because the "0g Trans Fat!" claim on Defendants' packaging is not "false or misleading in any respect," and is therefore permitted under 21 C.F.R. § 101.13(i)(3).  To support this claim, Defendants note that because the taco shells at issue here contain less than 0.5 grams of trans fat per serving, the Nutrition Facts Panel is required to express this amount as zero grams.  21 C.F.R. § 101.9(c)(2)(ii) ("If the serving contains less than 0.5 gram[s] [of trans fat], the content, when declared, shall be expressed as zero.").

The Ninth Circuit and at least two other Northern District of California district courts have concluded that nearly identical state law mislabeling claims regarding "0g Trans Fat" statements on food packaging were preempted by the NLEA.  Carrea v. Dreyer's Grand Ice Cream, Inc., 475 Fed. App'x 113, 115 (9th Cir. 2012) (memorandum disposition); Guttman v. Nissin Foods (U.S.A.) Co., No. 15-cv-00567-WHA, Dkt. No. 53, at *5 (N.D. Cal. July 15, 2015); Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111, 1121 (N.D. Cal. 2010).  In so holding, the Ninth Circuit reasoned that the "0g Trans Fat" statement on defendant's food packaging was "an express content claim that the [FDA] not only permits, 21 C.F.R. § 101.13(i)(3), but further instructs should mirror

United States District Court
Northern District of California

5

the Nutrition Facts panel, see 58 Fed. Reg. 44020, 44024–25 (Aug. 18, 1993) (stating that any discrepancy between a nutrient content claim and the Nutrition Facts panel would be 'confusing to consumers, and this consequence is unintended')." Carrea, 475 Fed. App'x at 115.  Because the Nutrition Facts Panel was required by FDA regulations to express the amount of trans fat as zero grams, the Ninth Circuit held that "the same rule applies to the statement on the front of [the package]." Id.  Accordingly, plaintiff's state law claims seeking to "enjoin and declare unlawful the very statement that federal law permits and defines" would "impose a burden through state law that is not identical to the requirements under section 343(r)." Id.  Both Guttman and Chacanaca reached the same conclusion. Guttman, No. 15-cv-00567, Dkt. No. 53, at *5 (finding state law claims regarding the use of the statement "0g Trans Fat" to be "expressly preempted by Section 343-1(a)(5)"); Chacanaca, 752 F. Supp. 2d at 1121 (finding state law claims regarding the use of the statement "0 grams trans fat" preempted).

Plaintiff does not dispute the reasoning applied by Carrea, Guttman, or Chacanaca. Instead, Plaintiff argues that a more recent Ninth Circuit case, Reid v. Johnson & Johnson, requires the Court to find that the NLEA does not preempt his mislabeling claims.  780 F.2d 952 (9th Cir. 2015).  In Reid, the Ninth Circuit held that state law mislabeling claims regarding the use of the phrase "No Trans Fat" on food packaging were not preempted by the NLEA. Id. at 963.  In making this determination, the Ninth Circuit relied principally on the fact that the FDA explicitly indicated that "No Trans Fat" and "trans fat-free" were "unauthorized nutrient content claim[s]." Id. at 962.  No such guidance is available from the FDA regarding the "0g Trans Fat!" statement at issue here.  Accordingly, as Judge Alsup noted in Guttman, Reid does not control.  No. 15-cv-00567, Dkt. No. 53, at *5.

The Court agrees with the reasoning in Carrea, Guttman, and Chacanaca, and holds that Plaintiff's state law mislabeling claims are expressly preempted by 21 U.S.C. § 343-1(a)(5).  The Court therefore grants Defendants' motion to dismiss Plaintiff's mislabeling claims (claims I, II, IV, V, and VI).[2]

---

[2] The Court notes that Defendants have recently brought to the Court's attention that on December 18, 2015, President Obama signed a new appropriations bill that allegedly "expressly precludes

**B. Standing**

Because the Court has concluded that Plaintiff's mislabeling claims are preempted by the NLEA, only Plaintiff's claim under the unfair prong of California's Unfair Competition Law and Plaintiff's implied warranty of merchantability claim remain.  These claims both involve the use of trans fats in Defendants' taco shells, not the packages' labeling.

Defendants argue that Plaintiff lacks standing to bring these claims because he "does not allege that he has suffered from any [physical] injury" and "has not alleged causation."  ECF No. 14 at 17.  Plaintiff responds that "where harm may result from exposure, the exposure itself constitutes the injury."  ECF No. 21 at 19.  Further, Plaintiff alleges that he "suffered physical injury when he repeatedly consumed Defendants' [taco shells] because consuming artificial trans fat in *any* quantity, including the quantity he actually consumer, inflames and damages vital organs and increases the risk of heart disease, diabetes, cancer, and death."  ECF No. 1 ¶ 104 (emphasis in original).  To support this assertion, Plaintiff cites a myriad of scientific evidence which purportedly shows that "[t]here is 'no safe level' PHO or artificial trans fat intake."  Id. ¶¶ 22–67.

Accepting these allegations as true, the Court concludes that Plaintiff's alleged physical injuries are sufficient to confer standing here.  See Backus v. General Mills, Inc., No. 15-cv-1964-TEH, 2015 WL 4932687, at *4 (N.D. Cal. Aug. 18, 2015) (finding nearly identical allegations

---

suits such as the instant case."  ECF No. 33.  That appropriations bill, H.R. 2029, provides, in relevant part:

> No partially hydrogenated oils as defined in the order published by the Food and Drug Administration in the Federal Register on June 17, 2015 (80 Fed. Reg. 34650 et seq.) shall be deemed unsafe within the meaning of section 409(a) and no food that is introduced or delivered for introduction into interstate commerce that bears or contains a partially hydrogenated oil shall be deemed adulterated under sections 402(a)(1) or 402(a)(2)(C)(i) by virtue of bearing or containing a partially hydrogenated oil until the compliance date as specified in such order (June 18, 2018).

H.R. 2029, Div. A, Title VII, § 754.  The Court declines to address the effect of this provision on Defendants' argument that Plaintiff's claims are preempted because the parties have not briefed the issue and the Court has already concluded that Plaintiff's mislabeling claims are preempted even absent the provision.

sufficient to confer standing).  Plaintiff alleges that the quantity of trans fat that he actually

consumed as part of Defendants' taco shells "inflame[d] and damage[d]" his vital organs.  ECF

No. 1 ¶ 104.  Such an allegation, which the Court must accept as true at the motion to dismiss

stage, <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975), is more than sufficient to satisfy the standing

requirement.  See <u>Preminger v. Peake</u>, 552 F.3d 757, 763 (9th Cir. 2008) ("The injury may be

minimal . . . '[A]n identifiable trifle' is sufficient to establish standing.") (quoting <u>Council of Ins.</u>

<u>Agents & Brokers v. Molasky-Arman</u>, 522 F.3d 925, 932 (9th Cir. 2008)).

      Defendants also argue that Plaintiff lacks standing for injunctive relief in particular

because "Defendants were changing their taco shell label and eliminating PHOs before Plaintiff

sent his first demand letter."  ECF No. 15 at 19.  While the Court agrees that Plaintiff's request for

injunctive relief with respect to his use claims may be mooted were Defendants to remove entirely

PHOs from the product-in-question, that has not yet happened.  Rather, Defendants merely appear

to be in the process of removing PHOs from their taco shells.  <u>See</u> ECF No. 14-15 (Declaration of

Scott Lerner) at 2 ("By mid-April 2015, B&G Foods had also already decided to eliminate

partially hydrogenated oils from the Products.  This change will be completed well before the

2018 timeline required by the FDA.").  As a result, the Court concludes that Plaintiff has standing

to pursue injunctive relief related to his use claims.

### C.  Primary Jurisdiction

      Finally, Defendant urges the Court to "defer to the FDA's scientific expertise in this arena

and dismiss or stay the action pursuant to the doctrine of primary jurisdiction."  ECF No. 14 at 25.

Primary jurisdiction "is a prudential doctrine under which courts may, under appropriate

circumstances, determine that the initial decisionmaking responsibility should be performed by the

relevant agency rather than the courts."  <u>Syntek Semiconductor Co. v. Microchip Tech. Inc.</u>, 307

F.3d 775, 780 (9th Cir. 2002).  The doctrine "is properly invoked when a claim is cognizable in

federal court but requires resolution of an issue of first impression, or of a particularly complicated

issue that Congress has committed to a regulatory agency."  <u>Id.</u> (quoting <u>Brown v. MCI</u>

<u>WorldCom Network Servs., Inc.</u>, 277 F.3d 1166, 1172 (9th Cir.2002)). In considering whether to

apply the primary jurisdiction doctrine, courts consider the following non-exclusive factors:

"(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." <u>Id.</u>

All four of the <u>Syntek</u> factors apply here.  First, both of Plaintiff's remaining claims require resolution of whether the amount of trans fats that were present in Defendant's taco shells was safe for human consumption.  Plaintiff's breach of implied warranty of merchantability claim requires the Court to determine whether the taco shells were "fit for the ordinary purposes for which such goods are sold." Cal. Comm. Code § 2314(2)(c).  Plaintiff's claim under the unfair prong of California's Unfair Competition Law requires the Court to "balanc[e] the harm to the consumer against the utility of the defendant's" inclusion of trans fat in its taco shells.  <u>Lozano v. AT&T Wireless Services, Inc.</u>, 504 F.3d 718, 736 (9th Cir. 2007) (noting that "California courts have not yet determined how to define 'unfair' in the *consumer* action context" and "endors[ing] the district court's approach to the law as if it still contained a balancing test."); <u>Perryman v. Litton Loan Servicing, LP</u>, 81 F. Supp. 3d 893, 899 (N.D. Cal. 2015) (applying the balancing test).  As Judge Henderson recently noted in addressing this precise issue, these questions are issues "of first impression, as neither the courts nor the FDA have yet determined whether PHOs are unsafe in the amount present in [defendant's products]." <u>Backus</u>, 2015 WL 4932687, at *17.

Second, although the FDA does not have jurisdiction over Plaintiff's state law claims, "Congress nonetheless granted the FDA authority to regulate food safety by requiring the pre-market approval of food additives and exempting foods that are generally recognized as safe." <u>Id.</u> (citing 21 U.S.C. §§ 342, 348).  Third, "it is clear that the FDCA subjects the food industry to comprehensive regulation." <u>Id.</u>; <u>see</u> <u>also</u> <u>Chacanaca</u>, 752 F. Supp. 2d at 1124 ("Without question, the FDA has extensively regulated food labeling in the context of a labyrinthine regulatory scheme.").

Fourth, resolution of these issues require both expertise and uniformity in administration.  Plaintiff's own Complaint includes myriad citations to scientific studies purporting to show that "[t]here is 'no safe level' of PHO or artificial trans fat intake." ECF No. 1 ¶¶ 22–67.  This is

9

1  "precisely the kind of expert question that agencies are better suited to answer than courts or

2  juries." Backus, 2015 WL 4932687, at *18; see also Weinberger v. Bentex Pharm., Inc., 412 U.S.

3  645, 654 (1973) ("Uniformity and consistency in the regulation of business entrusted to a

4  particular agency are secured, and the limited functions of review by the judiciary are more

5  rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances

6  underlying legal issues to agencies that are better equipped than courts by specialization, by

7  insight gained through experience, and by more flexible procedure."). Moreover, as Plaintiff's

8  own filings in this district show, there is a risk of conflicting judicial determinations of this

9  question. See Walker v. ConAgra Foods, Inc., No. 15-cv-2424-JSW, Dkt. No. 1 (N.D. Cal. June

10  1, 2015) (bringing nearly identical claims against defendant's "Crunch 'n Munch" product).  In

11  short, "[o]btaining expert advice from [the FDA] would help ensure uniformity in administration

12  of the comprehensive regulatory regime established by the FDCA." Astiana v. Hain Celestial

13  Grp., Inc., 783 F.3d 753, 761 (9th Cir. 2015).

14       Finally, as Judge Henderson has noted, "[t]his is not a case where the FDA has been silent

15  on the question of whether it will resolve the issue." Backus, 2015 WL 4932687, at *18.  Rather,

16  in its June 17, 2015 Final Determination Regarding Partially Hydrogenated Oils, the FDA stated

17  that "[a]ny interested party may seek food additive approval for one or more specific uses of PHOs

18  with data demonstrating a reasonable certainty of no harm of the proposed use(s)." 80 Fed. Reg.

19  34650, 34651.  Such petitions have already been filed with the FDA, Backus, 2015 WL 4932687,

20  at *18, and the FDA has stated that it intends to act on such petitions by June 18, 2018 at the

21  latest. 80 Fed. Reg. 34650, 34653 ("We are establishing a compliance date of June 18, 2018 for

22  this order to allow time for such petitions and their review.").

23       Plaintiff's sole argument against applying the primary jurisdiction doctrine is that

24  "Plaintiff's claims do not involve any complex scientific issues.  Rather, they require a routine

25  balancing of the benefits against the harms of B&G's use of a toxic carcinogen, which is well

26  within the Court's expertise." ECF No. 21 at 17.  However, each of the food cases cited by

27  Plaintiff in which courts have declined to apply the primary jurisdiction doctrine involved

28  mislabeling claims, as opposed to use claims.  See Reid, 780 F.3d at 967 ("The issue that this case

ultimately turns on is whether a reasonable consumer would be misled by [defendant's] marketing, which the district courts have reasonably concluded they are competent to address in similar cases."); Brazil v. Dole Food Co., 935 F. Supp. 2d 947, 960 (N.D. Cal. 2013) (noting that "[a]s with so many of the other food misbranding cases filed recently within this district, [plaintiff's] case is far less about science than it is about whether a label is misleading."); Lockwood v. Conagra Foods, Inc., 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009) ("[T]his is not a technical area in which the FDA has greater technical expertise than the courts—every day courts decide whether conduct is misleading."); Chacanaca, 752 F. Supp. 2d at 1124 ("[T]he issues that survive defendant's preemption arguments—whether or not the 'smart choices made easy' decal, the photographs of oats, nuts, and children in soccer uniforms, or the term 'wholesome' are misleading—do not entail technical questions or require agency expertise."); Delacruz v. Cytosport, Inc., No. 11-cv-3532-CW, 2012 WL 2563857, at *10 (N.D. Cal. June 28, 2012) ("The FDA's expertise, however, is not necessary to determine whether the labels are misleading."). Because the Court has already ruled that Plaintiff's mislabeling claims are preempted, only Plaintiff's use claims remain. And because these claims turn on the safety of small amounts of trans fat in Plaintiff's products, which is a question that the FDA is uniquely well-suited to answer, the cases cited by Plaintiff are inapposite. See Backus, 2015 WL 4932687, at *18.

Accordingly, the Court concludes that application of the primary jurisdiction doctrine is appropriate with respect to Plaintiff's remaining use claims. "[W]hen a court invokes primary jurisdiction 'but further judicial proceedings are contemplated, then jurisdiction should be retained by a stay of proceedings, not relinquished by a dismissal.'" Astiana, 783 F.3d 753, 761 (9th Cir. 2015) (quoting N. Cal. Dist. Council of Hod Carriers v. Opinski, 673 F.2d 1074, 1076 (9th Cir. 1982)). The Court will therefore stay Plaintiff's remaining claims pending further guidance from the FDA.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss as to Plaintiff's mislabeling claims (claims I, II, IV, V, and VI). Because further amendment of these claims would be futile, the Court dismisses these claims with prejudice. The Court denies Defendants'

11

1    motion to dismiss as to Plaintiff's use claims (claims III and VII).  The Court will stay these

2    claims pending the FDA's determination of the food additive status of trans fats.  Within 14 days

3    of the FDA's determination of any petition "seek[ing] food additive approval for one or more

4    specific uses of PHOs," 80 Fed. Reg. 34650, 34651, the parties shall file a joint statement no

5    longer than 15 pages setting forth their respective positions on the effect of the FDA's

6    determination on Plaintiff's remaining claims and recommending a further schedule.

7            IT IS SO ORDERED.

8    Dated:  February 8, 2016

9

10   _____

11                    JON S. TIGAR
                      United States District Judge

United States District Court
Northern District of California