# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY WALKER,<br><br>    Plaintiff,<br><br>v.<br><br>B&G FOODS, INC., et al.,<br><br>    Defendants. | Case No. 15-cv-03772-JST<br><br>**ORDER LIFTING STAY AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: ECF No. 14 |

At the June 12, 2019 case management conference, Defendants' counsel asked the Court to rule on outstanding aspects of Defendants' motion to dismiss, ECF No. 14. The Court stated that it would set the matter for hearing. However, upon review of the parties' briefs, and pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds the matter suitable for disposition without oral argument. The Court will grant the motion in part and deny it in part.

## I.    BACKGROUND

In this putative class action, Plaintiff Troy Walker contends that Defendants B&G Foods, Inc., and B&G Foods North America, Inc. unlawfully marketed and sold taco shells that contain partially hydrogenated oils ("PHOs"). The complaint asserts seven claims for relief: (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, "Unlawful Prong"; (2) violation of California's Unfair Competition Law, "Fraudulent Prong"; (3) violation of California's Unfair Competition Law, "Unfair Prong"; (4) violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500; (5) violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750; (6) breach of express warranty; and (7) breach of the implied warranty of merchantability. ECF No. 1 at 24-32.

As the Court previously explained:

> Plaintiff's claims can be divided into mislabeling claims and use claims. Plaintiff's mislabeling claims (claims I, II, IV, V, and VI) allege that Defendants' taco shells were mislabeled because the packaging stated "0g Trans Fat!" when, in fact, Defendants' taco shells contained trans fat. Plaintiff's use claims (claims III and VII) contend that the inclusion of trans fat in Defendants' taco shells renders them "not fit for their ordinary purpose" and that the harm caused by the inclusion of trans fat in the taco shells "outweighs any conceivable benefit of such conduct." ECF No. 1 ¶¶ 156, 183.

ECF No. 42 at 4 (footnote omitted). The Court dismissed the mislabeling claims with prejudice as preempted by the federal Nutrition Labeling and Education Act. *Id.* at 4-6, 11. The Court then concluded that Walker has standing to pursue his use claims, including standing to pursue injunctive relief. *Id.* at 7-8. However, the Court stayed consideration of those claims under the primary jurisdiction doctrine, pending the Food and Drug Administration's "determination of the food additive status of trans fats." *Id.* at 8-12. The Court ordered the parties to file a joint statement, "[w]ithin 14 days of the FDA's determination of any petition 'seek[ing] food additive approval for one or more specific uses of PHOs,' 80 Fed. Reg. 34650, 34651, . . .setting forth their respective positions on the effect of the FDA's determination on Plaintiff's remaining claims and recommending a further schedule." *Id.* at 12 (second alteration in original).

The parties agree that the FDA issued a relevant determination on May 21, 2018. ECF No. 52 at 2; ECF No. 55 at 3. The parties did not file the required joint statement within 14 days, and it was not until nearly one year later – on May 13, 2019 – that Walker filed a unilateral statement requesting that the Court lift the stay and grant leave to file an amended complaint. ECF No. 52. The Court set this matter for a June 12, 2019 case management conference. ECF No. 54. At that time, Defendants requested that the Court rule on the outstanding issues from its original motion to dismiss, ECF No. 14.

Two substantive issues remain to be resolved: whether Walker's implied warranty of merchantability claim should be dismissed, and whether the class claims should be dismissed "because Plaintiff has not alleged any facts showing that the class is ascertainable. In specific, Plaintiff has not alleged any plausible way to identify who would be in the class." ECF No. 14-1 at 35-38. Defendants also ask the Court to order Walker to show cause as to why sanctions should

2

not be imposed under Federal Rule of Civil Procedure 11(c)(3). *Id.* at 38-39.

## II. DISCUSSION

### A. Implied Warranty of Merchantability

Walker contends that Defendants breached the implied warranty of merchantability by selling goods that are not "fit for the ordinary purposes for which such goods are used." Cal. Com. Code § 2314(2)(c); *see* ECF No. 21 at 13. In particular, he asserts that the presence of PHOs in the taco shells at issue renders them unfit for human consumption.

"[A] breach of the implied warranty of merchantability means the product did not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003). It "does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995) (internal quotation marks and citation omitted).

The Court agrees with other courts in this district that have concluded that the presence of PHOs does not satisfy this standard. As one court explained:

> [T]he FDA did not determine that products that contain PHO are punfit for human consumption. Instead they provided a three-year window for further investigation and phasing out. The FDA recognized that people would continue to consume products containing PHO up until the compliance date as companies "exhaust[ed] existing product inventories." Final Determination, 80 Fed. Reg. 34650-01, 34669.

*Backus v. Biscomerica Corp.*, No. 16-cv-03916-HSG, 2017 WL 1133406, at *5 (N.D. Cal. Mar. 27, 2017). Similarly, another court concluded:

> Backus has not plausibly alleged that the baking mixes were unfit for even the most basic degree of ordinary use. While the Complaint is full of citations to scientific studies discussing the dangers of increased ingestion of PHOs, notably absent are any allegations of the amount of PHOs present in a serving of foods made from General Mills baking mixes. *See* Compl. ¶¶ 1-123. Although the Court has found Backus's alleged immediate injuries to be sufficient for standing under Article III, where even an identifiable trifle is sufficient, these allegations do not state a plausible claim that the mixes were totally unfit for their intended use.

*Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 932 (N.D. Cal. 2015). Other courts have reached

similar conclusions regarding other food products. *E.g.*, *Bohac v. Gen. Mills, Inc.*, No. 12-cv-05280-WHO, 2014 WL 1266848, at *10 (N.D. Cal. Mar. 26, 2014) ("Bohac does not allege that the products [granola bars allegedly containing genetically modified organisms and other artificial ingredients] lack 'even the most basic degree of fitness for ordinary use.' Nor does he allege any facts that the granola bars are not merchantable or fit for consumption; he has not, for example, alleged that the products were not edible or contaminated." (citation omitted)); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) ("Viggiano does not allege any facts suggesting that the soda [which allegedly contained artificial flavors] is not merchantable or fit for use as a diet soft drink; he has not, for example, alleged that the beverage was not drinkable, that it was contaminated or contained foreign objects, etc.").

As Walker observes in his opposition, one court in this district did find that one plaintiff's "complaint has plausibly alleged that foods containing artificial trans-fat are not fit for human consumption, due to the myriad medical conditions to which they are linked." *Guttmann v. Nissin Foods (U.S.A.) Co.*, No. C 15-00567 WHA, 2015 WL 4309427, at *5 (N.D. Cal. July 15, 2015). However, the Court does not find that decision persuasive because it appears to be based both on the court's conclusion that no court had previously addressed the issue – which, as noted above, is no longer the case – and on the defendant's failure to raise anything other than a standing argument. *See id.*

In addition, as Walker fails to mention, the same court subsequently dismissed the plaintiff's claim for breach of the implied warranty of merchantability because "even if Guttmann could claim that Nissin's noodles were unfit for human consumption due to the presence of artificial trans-fat, Guttmann could have easily discovered that defect by reading the ingredients, which undisputedly listed partially-hydrogenated oils." *Guttmann v. Nissin Foods (U.S.A.) Co.*, No. C 15-00567 WHA, 2015 WL 4881073, at *2 (N.D. Cal. Aug. 14, 2015) (relying on Cal. Com. Code § 2316(3)(b) ("When the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him.")). Similarly, in this case, as demonstrated by Exhibit A to the complaint, the packaging at

4

issue lists "partially hydrogenated soybean oil" as an ingredient. ECF No. 1 at 35. Like the plaintiff in *Backus v. Biscomerica*, Walker "does not suggest that the products did not disclose the presence of PHO on their labels or that Defendant otherwise hid their presence. Plaintiff simply alleges that he 'is a busy person and cannot reasonably inspect every ingredient of every food that he purchases for himself and others, and he was unaware that [Defendant's Products] were dangerous when he purchased them.' Compl. ¶¶ 92-93, 96." 2017 WL 1133406, at *5. The complaint in this case contains identical allegations. *Compare* ECF No. 1 ¶¶ 109-10, 113 *with Backus v. Biscomerica*, No. 16-cv-03916-HSG, ECF No. 1 ¶¶ 92 93, 96. Put simply, the food labeling laws do not contain a "busy person" exception. And Walker has cited no authority to persuade the Court to reach a different result; as in *Biscomerica*, he "does not provide any authority to support a claim where the consumer is simply too busy to read the ingredients." 2017 WL 1133406, at *5. In fact, Walker's one-paragraph opposition to the motion to dismiss fails to respond at all to Defendants' arguments concerning section 2316. *See* ECF No. 21 at 13.

For all of the above reasons, Walker fails to state a plausible claim for breach of the implied warranty of merchantability. Because it does not appear that Walker could allege any facts to support his contention that the taco shells at issue lack "even the most basic degree of fitness for ordinary use," *Mocek*, 114 Cal. App. 4th at 406, the Court will dismiss this claim without leave to amend. *See Backus v. Gen. Mills*, 122 F. Supp. 3d at 933; *Bohac*, 2014 WL 1266848, at *13; *but see Backus v. Biscomerica*, 2017 1133406 (dismissing with leave to amend but noting that "Plaintiff's entire theory as to each cause of action currently pled is deficient as a matter of law, so Plaintiff must either (1) plead a different and sufficient basis for these claims if he can do so consistent with his obligations under Rule 11; or (2) confirm that he does not wish to amend and request dismissal with prejudice.").

**B.     Administrative Feasibility of Identifying Class Members**

During the time that this case was stayed, the Ninth Circuit decided *Briseno v. ConAgra Foods, Inc.*, in which it explained that "the language of Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification. Mindful of the Supreme Court's guidance, we decline to interpose an additional hurdle into the class certification process

delineated in the enacted Rule." 844 F.3d 1121, 1126 (9th Cir. 2017). This forecloses Defendants' argument that Walker's class claims should be dismissed on grounds that "Plaintiff has not alleged any plausible way to identify who would be in the class." ECF No. 14-1 at 37.

### C. Sanctions

Finally, the Court declines Defendants' request that the Court order Walker to show cause under Federal Rule of Civil Procedure 11(c)(3) as to why he and his attorney should not be sanctioned. Rule 11(c)(3) allows for such orders on a court's own initiative, not on motion by a party. If Defendants believe that sanctions are warranted under Rule 11, they must follow the procedure for filing a motion for sanctions under Rule 11(c)(2). In addition, orders under Rule 11(c)(3) "will ordinarily be issued only in situations that are akin to a contempt of court," and the Court is not convinced that such circumstances are present here. Fed. R. Civ. P. 11(c) advisory committee's note to 1993 amendment.

## CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. The motion is granted as to Walker's breach of the implied warranty of merchantability claim, which is dismissed without leave to amend. It is denied as to Walker's proposed class claims and Defendants' request that the Court issue an order to show cause under Federal Rule of Civil Procedure 11(c)(3).

The stay on this case is lifted. The parties shall appear for a further case management conference on September 30, 2019, and file a joint case management statement on or before September 23, 2019.

**IT IS SO ORDERED.**

Dated: August 20, 2019

JON S. TIGAR
United States District Judge