J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
Matthew Borden, Esq. (SBN: 214323)
borden@braunhagey.com
David H. Kwasniewski, Esq. (SBN: 281985)
kwasniewski@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

ATTORNEYS FOR DEFENDANTS
B&G FOODS, INC. AND B&G FOODS
NORTH AMERICA, INC.

**UNITED STATES DISTRICT COURT FOR**

**NORTHERN DISTRICT OF CALIFORNIA**

TROY WALKER, on behalf of himself and all others similarly situated,

Plaintiff,

v.

B&G FOODS, INC., B&G FOODS NORTH AMERICA, INC.,

Defendants.

Case No. 4:15-cv-03772-JST

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR LEAVE TO AMEND THE COMPLAINT**

**Before:** Hon. Jon S. Tigar
**Date:** November 20, 2019
**Time:** 2:00 p.m.
**Courtroom:** 6

**Compl. Filed:** August 18, 2015
**Trial Date:** None

# TABLE OF CONTENTS

INTRODUCTION .......... 1
FACTUAL BACKGROUND .......... 3
A. Plaintiff's Allegations .......... 3
B. Procedural History .......... 5
C. Plaintiff's Proposed Amendments .......... 6
ARGUMENT .......... 7
I. PLAINTIFF'S PROPOSED AMENDMENTS ARE FUTILE .......... 7
A. The Proposed New Plaintiff Cannot Serve as a Putative "Class Representative" Because Any Supposed Class Claims Are Time-Barred .......... 7
B. Any Individual Claims Asserted by the Proposed New Plaintiff Are Also Likely Barred .......... 8
C. Plaintiff Cannot Resuscitate Claims Dismissed with Prejudice .......... 11
1. Plaintiff's Motion Is Untimely .......... 11
2. Plaintiff's Mislabeling Claims Remain Barred under the Safe Harbor Doctrine .......... 13
II. PLAINTIFF'S ATTEMPT TO PLEAD AROUND THE STATUTE OF LIMITATIONS DEFENSE IS IMPROPER .......... 14
III. PLAINTIFF UNDULY DELAYED SEEKING LEAVE TO AMEND .......... 14
CONCLUSION .......... 16

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Allstate Ins. Co. v. Herron*,
634 F.3d 1101 (9th Cir. 2011) .......... 12

*American Pipe & Construction v. Utah*,
414 U.S. (1974) .......... 7

*AmerisourceBergenCorp. v. Dialysist West, Inc.*,
465 F.3d 946 (9th Cir. 2006) .......... 3, 14

*Bonin v. Calderon*,
59 F.3d 815 (9th Cir. 1995) .......... 7

*Brazil v. Dole Food Co.*,
935 F. Supp. 2d 947 (N.D. Cal. 2013) .......... 8

*Cal. Pub. Emps'. Ret. Sys. v. Chubb Corp.*,
No. 00-4285(GEB), 2002 WL 33934282 (D.N.J. June 26, 2002) .......... 9, 11

*Callan v. Amdahl Corp.*,
Civ. No. C-94-0295, 1995 WL 261420 (N.D. Cal. 1995) .......... 15

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
475 F. App'x 113 (9th Cir. 2012) .......... 3, 4, 13, 14

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (Apr. 8, 1999) .......... 13

*China Agritech, Inc. v. Resh*,
138 S. Ct. 1800 (2018) .......... 2, 7, 8

*Crown Cork & Seal Co. v. Parker*,
462 U.S. 345 (1983) .......... 7

*Ebner v. Fresh, Inc.*,
818 F.3d 799 (9th Cir. 2016) .......... 13

*Hawkins v. Kroger Company*,
906 F.3d 763 (9th Cir. 2018) .......... passim

*In re Crazy Eddie Sec. Litig.*,
747 F. Supp. 850 (E.D.N.Y. 1990) .......... 9

*Jackson v. Bank of Hawaii*,
902 F.2d 1385 (9th Cir. 1990) .......... 14

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 8

*Lehman v. United States*,
154 F.3d 1010 (Rule 60) .......... 12

*Lemoge v. United States*,
587 F.3d 1188 (9th Cir. 2009) .......... 12

*Lindauer v. Rogers*,
91 F.3d 1355 (9th Cir. 1996) .......... 11

*Maine State Ret. Sys. v. Countrywide Fin.*,
722 F. Supp. 2d 1157 (C.D. Cal. 2010) .......... 9

*McDowell v. Calderon*,
197 F.3d 1253 (9th Cir. 1999) .......... 12

*Mende v. Dun & Bradstreet, Inc.*,
670 F.2d 12 (9th Cir. 1982) ........ 15

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990) ........ 14

*Netbula, LLC v. Bindview Dev. Corp.*,
No. C06-00711, 2007 WL 2221070 (N.D. Cal. Aug. 2. 2007) ........ 15

*Palmer v. Stassinos*,
236 F.R.D. 460 (N.D. Cal. 2006)........ 2, 9

*PAMC, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
Case No. 2:18-cv-06001-SVW-AS, 2019 WL 2158229 (C.D. Cal. April 12, 2019) ........ 12

*Roe v. White*,
No. C 03-04035 CRB, 2009 WL 4899211 (N.D. Cal. Dec. 11, 2009)........ 16

*Swearingen v. Attune Foods, Inc.*,
Case No. C 13-4541 SBA, 2015 WL 370167........ 12

*Walters v. Edgar*,
163 F.3d 430 (7th Cir. 1998) ........ 9

*Wells Fargo Mgtg.-Backed Sec. Litig.*,
No. 09-CV-01376-LHK, 2010 WL 4117477 (N.D. Cal. Oct. 19, 2010)........ 9

**STATUTES**

21 U.S.C. § 301........ 3

Cal. Civ. Code § 1783........ 7

Pub. L. 101-535, 104 Stat. 2352 ........ 3

**RULES**

Fed. R. Civ. P. 9(b) ........ 8

Fed. R. Civ. P. 59........ 3, 12

Fed. R. Civ. P. 60........ 3, 12, 13

**REGULATIONS**

21 C.F.R. § 101.13(i) ........ 4

21 C.F.R. § 101.9(c)(2)(ii)........ 4

58 Fed. Reg. 44020, 44024-25 (Aug. 18, 1993) ........ 4

Defendants B&G Foods, Inc. and B&G Foods North America, Inc. (collectively, "B&G Foods") respectfully submit this Opposition to Plaintiff's Motion for leave to amend the Complaint.

**INTRODUCTION**

This case concerns taco shells that Plaintiff allegedly bought in "January or February 2015." (Compl. ¶ 70.) In two detailed Orders (Dkt. Nos. 42 & 60), the Court dismissed all of Plaintiff's claims but one. The remaining claim is that B&G Foods supposedly committed an "unfair" business practice by using partially hydrogenated oils ("PHOs") in its taco shells. Consistent with FDA regulations, which expressly permitted using PHOs through at least June 18, 2018, B&G Foods began phasing out PHOs from its taco shells in 2015 and finished before the FDA deadline.

Plaintiff seeks to amend his complaint to add a new putative "class representative" whose claims are time-barred, and to re-assert labeling claims that the Court dismissed over three years ago based on a supposed intervening change in law that occurred on October 4, 2018. This is Plaintiff's second attempt at this motion because in his first effort, he declined to attach his proposed amended pleading. Now it is clear why neither of these amendments should be allowed.

As B&G Foods pointed out in its original opposition to this motion, the language "0 grams trans fat" was removed in April 2015, which means that the proposed new plaintiff's claim that she was misled by this language is time-barred. In response, the proposed new plaintiff attempts to evade the statute of limitations by vaguely and nonsensically pleading that "[b]ecause of the high frequency of her purchases," she somehow bought B&G Foods' taco shells "approximately when they no longer appeared on store shelves [in] mid 2016," without specifying when. (Dkt. No. 70-1 ¶ 75.) These allegations do not allege a timely claim.

The proposed amended complaint also reveals that Plaintiff seeks to reassert exactly the same claims this Court already dismissed. If Plaintiff believed that new case law helps his claims (it does not), he was obligated to bring a motion under Rule 59 or 60—not file a motion for leave to amend long after the dismissal or the supposed change in law. His time to seek reconsideration has long passed.

As detailed below, Plaintiff's motion fails on many additional grounds. Leave to amend should be denied for at least the following reasons:

***First***, Plaintiff cannot add a new, putative "class representative." Under *American Pipe*, the filing of a class action can toll *individual* claims. However, plaintiffs that take advantage of such tolling cannot act as "class representatives." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1808 (2018) ("A would-be class representative who commences suit after the expiration of the limitation period … can hardly qualify as diligent in asserting claims and pursuing relief," and thus is not entitled to serve as representative plaintiff). Plaintiff does not dispute that B&G Foods relabeled Ortega® taco shells in April 2015 to remove the language "0 grams trans fat." (Dkt. No. 18.) Yet the putative plaintiff claims to have been misled by this language, which means that she bought the taco shells over four years ago, outside the statutory period. The proposed amended complaint does not plausibly allege any facts to the contrary; rather the proposed new plaintiff claims she purchased products ***after*** they "no longer appeared on store shelves" which makes no sense, especially since she also alleges she ***only*** purchased the products at "California grocery stores." (Dkt. No. 70-1 ¶¶ 74–75.) Further, such allegations fail under Rule 9(b), which requires a plaintiff to identify when he or she was misled. Thus, any effort to add this new plaintiff as a putative "class representative" is time-barred and therefore futile.

***Second,*** to the extent the unnamed "class representative" is pursuing claims on her own behalf, they are still time-barred. Plaintiff's labeling claims were only pending a few months and, as noted above, concern labeling over four years old. Further, a pending class action does not toll the statute of limitations for any claim if the named plaintiff lacks standing from the outset. *Palmer v. Stassinos*, 236 F.R.D. 460 (N.D. Cal. 2006). Here, Plaintiff's lawyer has refused multiple requests to produce Plaintiff for deposition, which will resolve the standing question. At minimum, the Court should defer ruling on the motion to amend until after his deposition has taken place, which is currently scheduled for November 13, 2019, one week before the hearing on this motion.

***Third,*** it is now apparent that Plaintiff intentionally withheld his proposed amended complaint to attempt to plead around the statute-of-limitations issues surrounding the new plaintiff's putative claims. Unlike Plaintiff, who specifically alleges when he supposedly purchased his taco shells, the proposed new plaintiff alleges that she does not remember when she purchased the products but that it may have been after they were no longer being sold. Plaintiff's

attempt to get around the deficiency B&G Foods identified in its previous opposition by including vague and nonsensical allegations is a separate and independent reason to deny the motion for leave to amend. *AmerisourceBergenCorp. v. Dialysist West, Inc.*, 465 F.3d 946, 953–54 (9th Cir. 2006) (gamesmanship in amending complaint to change legal tactics after defendant identified deficiency justified denial of leave to amend).

***Fourth***, Plaintiff's attempt to reassert the labeling claims that the Court dismissed in February 2016 is both untimely and futile. Rule 15 is not a mechanism to undo a dismissal with prejudice; to the contrary, dismissal with prejudice means that an amendment under Rule 15 will not be entertained. Plaintiff's labeling claims were dismissed over three years ago, and he has had almost a year since the Ninth Circuit decision he cited in his motion (*Kroger*) to file a motion for reconsideration or for relief from judgment under Federal Rule of Civil Procedure 59 or 60, yet neglected to do so. Moreover, *Kroger* does not apply to B&G Foods' labeling claims here. At the time Ortega® taco shells' packaging included the phrase "0g Trans Fat," the Ninth Circuit interpreted the applicable federal regulations as permitting—indeed, mandating—the use of this phrase. *See Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113 (9th Cir. 2012). B&G Foods changed its packaging over three years before *Kroger* was decided, and Plaintiff's claim is therefore barred by California's safe harbor doctrine.

***Fifth***, Plaintiff unduly delayed bringing any of the above issues before the Court, including by failing to file a proper motion for leave to amend in the first instance. Plaintiff is attempting to litigate issues from the days of yore that already have been decided by the FDA and trying to challenge labeling that was changed over four years ago. At the same time, he has not been diligent in pursuing the claims and offers no evidence for why this occurred. That fails to carry his burden as the movant herein.

## FACTUAL BACKGROUND

### A. Plaintiff's Allegations

The FDA is the federal agency tasked with regulating food and food labeling under the FDCA (21 U.S.C. §§ 301, *et seq.*) as amended by NLEA (Pub. L. 101-535, 104 Stat. 2352, Nov. 8, 1990). For many years, the FDA, the scientific community, consumers and members of the food

industry have discussed the appropriate regulation and use of trans fat. In 2015, after notice and comment from the public, the FDA determined that it was going to require manufacturers to phase out partially hydrogenated oils ("PHOs") by June 2018.

FDA regulations also dictate what a company must say about trans fat in its products. In 1993, the FDA issued regulations providing that if a product contains less than 0.5 grams of trans fat per serving, it must be labeled "0 grams trans fat." 21 C.F.R. § 101.9(c)(2)(ii). The rule states:

> "*Trans* fat" or "*Trans*": … Trans fat content shall be indented and expressed as grams per serving to the nearest 0.5 (1/2)-gram increment below 5 grams and to the nearest gram increment above 5 grams. **If the serving contains less than 0.5 gram, the content, when declared, shall be expressed as zero**.

*Id*. (emphasis added).

To avoid consumer confusion, FDA regulations further require that any statement on the front of the package mirror the statement in the nutrition panel. 21 C.F.R. § 101.13(i); 58 Fed. Reg. 44020, 44024-25 (Aug. 18, 1993) (stating any discrepancy between nutrient content claim and Nutrition Facts panel would be "confusing to consumers, and this consequence is unintended").

As allowed by FDA regulations, Ortega® taco shells contained trace levels of PHOs (under 0.5g) and thus stated "0 g trans fat" on both the nutrition label and front label. In April 2015, B&G Foods removed "0 g trans fat" from the front of the label. In 2015, B&G Foods began phasing out the use of PHOs in Ortega® taco shells, and completed this process prior to June 18, 2018, pursuant to the FDA's regulations.

On August 18, 2015, long after the label was changed, Plaintiff filed this action. He asserted seven causes of action. As the Court explained, Plaintiff's seven overlapping claims were really just two: "labeling claims" and "use" claims. (Dkt. No. 42 at 4.) Plaintiff's labeling claims asserted that the language "0g Trans Fat" that was on the front of the taco shell package before April 2015 deceived Plaintiff into buying Ortega® taco shells because he thought this meant that the taco shells did not contain any PHOs. Plaintiff's "use" claims asserted that using trans fats in taco shells was an unfair business practice and a breach of warranty. (Dkt. No. 42 at 4.)

**B. Procedural History**

B&G Foods filed a motion to dismiss on September 14, 2015. (Dkt. No. 18.) On February 8, 2016, the Court issued an Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Staying Remaining Claims ("First Dismissal Order"). (Dkt. No. 42.) In the First Dismissal Order, relying on existing Ninth Circuit case law, the Court dismissed Plaintiff's "labeling" claims as preempted. (*Id.* at 4–6.) The Court stayed the "use" claims pending a ruling by the FDA regarding the use of PHOs in food. (*Id.* at 8–11.)

On March 3, 2016, Plaintiff appealed the Court's stay of his "use" claims. On July 20, 2016, the Ninth Circuit dismissed Plaintiff's appeal as frivolous and sanctioned Plaintiff. (Declaration of Matthew Borden ("Borden Decl."), Ex. 1.)

On May 21, 2018, the FDA issued its ruling on PHOs. The FDA stated:

> FDA is extending the compliance date for certain uses of partially hydrogenated oils (PHOs). For the majority of uses of PHOs, June 18, 2018, remains the date after which manufacturers cannot add PHOs to foods. However, to allow for an orderly transition in the marketplace, FDA is allowing more time for products produced prior to June 18, 2018 to work their way through distribution. FDA is extending the compliance date for these foods to January 1, 2020. This action balances the health benefits of removing PHOs from the food supply with the need to provide an orderly transition in the marketplace.

https://www.fda.gov/food/food-additives-petitions/final-determination-regarding-partially-hydrogenated-oils-removing-trans-fat. The FDA further noted: "It's important to note that trans fat will not be completely gone from foods because it occurs naturally in small amounts in meat and dairy products, and is present at very low levels in other edible oils." *Id.*

After the FDA issued this ruling on May 21, 2018, Plaintiff did nothing for almost a year. On May 13, 2019, Plaintiff notified the Court of the FDA's ruling.

On June 12, 2019, the Court held a case management conference. At the conference, B&G Foods asked the Court to rule on some discrete issues in the motion to dismiss that had not been previously addressed. On August 20, 2019, the Court issued an Order Lifting Stay and Order Granting in Part and Denying in Part Motion to Dismiss. (Dkt. No. 60.) ("Second Dismissal

Order.") In the Second Dismissal Order, the Court dismissed one of Plaintiff's two "use" claims, his warranty claim. (*Id.* at 3–5.) This left only the unfair business practices claim to resolve.

**C. Plaintiff's Proposed Amendments**

On April 26, 2019, Plaintiff's lawyer sent a demand letter claiming that a new client Nancy Schier ("Schier") was supposedly injured by the "0g Trans Fat" label on the taco shells and therefore wanted to assert "class" claims going back to 2008. (Borden Decl., Ex. 2.) On April 30, 2019, Plaintiff's lawyer sent a demand letter claiming that a new client Sabrina Silva ("Silva) was supposedly injured by the "0g Trans Fat" label on the taco shells and therefore wanted to assert "class" claims going back to 2008. (Borden Decl., Ex. 3.)

On August 21, 2019, Plaintiff filed his first motion for leave to amend the complaint. (Dkt. No. 61.) As B&G Foods noted in its opposition, Plaintiff failed to attach a copy of the proposed amended complaint, as required by the local rules. (Dkt. No. 65 at 1.) Just two days later, Plaintiff submitted a 31-page, 165-paragraph proposed amended complaint along with a reply. (Dkt. No. 66-1.) On September 26, 2019, the Court correctly found that this was improper, and accordingly denied Plaintiff's motion. (Dkt. No. 69.)

The same day, Plaintiff filed the instant motion, his second attempt to seek leave to amend. (Dkt. No. 70.) The motion is a nearly verbatim copy of his original motion, although this time Plaintiff opted to include a proposed amended complaint. This proposed amended complaint[1] identifies Ms. Schier as the new putative class representative (what happened to Silva is never explained). The proposed amended complaint asserts four causes of action, three relating to products' labeling, arising under the California Unfair Business Practices Act and Consumer Legal Remedies Act; and one relating to the products' use of PHOs, arising under the Unfair Business Practices Act. Instead of a supposed nationwide class, the proposed class would now consist only of citizens of Arkansas, California, Connecticut, Delaware, the District of Columbia, Florida, Hawaii, Illinois, Massachusetts, Michigan, Missouri, New Jersey, New York, Rhode Island,

---

[1] The proposed amended complaint attached to the instant motion (Dkt. No. 70-1) includes several revisions in the section of the complaint describing the health effects of trans fats. (*Compare* ¶¶ 37, 60 of Dkt. 66-1 and 70-1.) Plaintiff's motion does not explain these revisions or whether his prior complaints do not accurately describe the science behind trans fats' health effects.

Vermont, Washington, and Wisconsin. Plaintiff's previously asserted warranty and false advertising claims are not re-asserted in the proposed amended complaint.

## ARGUMENT

Leave to amend should be denied if the proposed amendment is futile or if leave is only sought after undue delay. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Plaintiff's motion should be denied because the proposed amendments fail both prongs of *Calderon*.

## I. PLAINTIFF'S PROPOSED AMENDMENTS ARE FUTILE

The amendments Plaintiff claims he wants to make are futile because the proposed amendments are time barred, impermissible under the Federal Rules of Civil Procedure and foreclosed by California's safe harbor rule.

### A. The Proposed New Plaintiff Cannot Serve as a Putative "Class Representative" Because Any Supposed Class Claims Are Time-Barred

According to Plaintiff's motion, the unnamed plaintiff he seeks leave to add wants to be a putative "class representative." (Dkt. 61 at 2.) This unnamed individual cannot do so because she failed to bring a claim within the statutory period. The CLRA is subject to a three-year statute of limitations. Cal. Civ. Code § 1783. The UCL is subject to a four-year statute of limitations. Bus. & Profs. Code § 17208. Here, B&G Foods removed the "0g Trans Fat!" statement from its labels in April 2015, more than four years ago. (Dkt. No. 14-15 ¶ 2.) Thus, any purchases of Ortega® taco shells by the proposed new plaintiff must have been made over four years ago – outside the statute of limitations.

In *American Pipe & Construction v. Utah*, 414 U.S. 358 (1974), the Supreme Court held that the filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint. Thus, if claims are dismissed or class-action status is denied, under *American Pipe*, individuals are free to either intervene in the still-pending action or file their own individual claims. *Id.* at 544, 552–53; *Crown Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983).

However, as the Supreme Court has recently clarified, the *American Pipe* tolling rule does not apply to "untimely successive class actions …." *China Agritech*, 138 S. Ct. at 1806. *American*

*Pipe* should not apply to such claims, the Court explained, because "efficiency favors early assertion of competing class representative claims," so the district court "can select the best plaintiff with knowledge of the full array of potential class representatives and class counsel." *Id.* at 1807. Excluding class claims from the *American Pipe* tolling rule also comports with basic notions of diligence. While tolling was permissible for individuals pursuing individual claims because they "reasonably relied on the class representative, who sued timely," "[a] would-be class representative who commences suit after expiration of the limitation period, however, can hardly qualify as diligent in asserting claims and pursuing relief." *Id.* at 1808. Accordingly, a would-be class representative's "interest in representing the class as lead plaintiff … would not be preserved by the prior plaintiff's timely filed class suit." *Id.*

Here, Plaintiff seeks to add a "proposed class representative," who will assert some claims relating to the "0g Trans Fat!" language on behalf of supposedly "similarly situated" people in 16 different states and the District of Columbia. But the products in question were discontinued in 2015, and Plaintiff provides no plausible allegations that she or anyone else could have purchased the products less than four years ago. The proposed new plaintiff concedes that she does not remember when she purchased the products, and then claims that it may have been after they were no longer being sold in 2016. (Dkt. No. 70-1 ¶ 75.) If the new plaintiff cannot even remember whether she purchased the products before they were discontinued, she cannot plausibly allege a timely claim consistent with the dictates of Rule 9(b). *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 964 (N.D. Cal. 2013) (Rule 9(b) requires labeling plaintiff to allege when she bought the product).[2]

**B. Any Individual Claims Asserted by the Proposed New Plaintiff Are Also Likely Barred**

Even if the proposed new plaintiff was asserting claims solely on her own behalf, they would still be barred. Plaintiff's "labeling" claims were only pending between August 18, 2015, and February 8, 2016. Thus, any *American Pipe* tolling could not resuscitate any proposed CLRA claims with a three-year statute. B&G Foods changed its label in "mid-April 2015." (Dkt. No. 14-

[2] In federal court, Rule 9(b) applies to claims brought under the UCL and CLRA because they are grounded in fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009).

15 ¶ 2.) Plaintiff Schier offers no plausible allegation that she purchased the products in that timeframe. Again, she nonsensically alleges that she purchased the products "approximately when they no longer appeared on store shelves" in 2015 and 2016. (Dkt. No. 70-1 ¶ 75.) Precisely how Plaintiff managed to accomplish this feat is not explained, particularly as she only ever got the products from the shelves of "California grocery stores." (Dkt. No. 70-1 ¶ 74.) Even the most serious "taco-nnoisseur" cannot buy taco shells that are no longer being made or sold. Apart from this single allegation, nothing in the proposed amended complaint or motion explains how Ms. Schier's purchases fall within the statutory period.

Further, *American Pipe* tolling does not apply if the named class representative is found to lack standing. *Palmer*, 236 F.R.D. at 464–65. This exception flows from "the inflexible principle that, under Article III of the Constitution, federal courts may only decide cases and controversies, and a plaintiff without standing presents no live case or controversy." *Id.* (citing *Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998) (Posner, C.J.) (class representative who lacks standing does not toll the statute of limitations for those who later seek to intervene as plaintiffs, even if those intervenors may have standing). Courts have also "expressed concerns that extending *American Pipe* tolling to class action claims the original named plaintiffs had no standing to bring will encourage filings made merely to extend the period in which to find a class representative." *In re Wells Fargo Mgtg.-Backed Sec. Litig.*, No. 09-CV-01376-LHK, 2010 WL 4117477 *5 (N.D. Cal. Oct. 19, 2010) (internal quotation marks omitted); *Maine State Ret. Sys. v. Countrywide Fin.*, 722 F. Supp. 2d 1157, 1166–67 (C.D. Cal. 2010) (joining in concern that *American Pipe* tolling can be abused to extend period to find actual class representative); *In re Crazy Eddie Sec. Litig.*, 747 F. Supp. 850, 856 (E.D.N.Y. 1990) (declining to toll class claims originally asserted without standing); *Cal. Pub. Emps'. Ret. Sys. v. Chubb Corp.*, No. 00-4285(GEB), 2002 WL 33934282 (D.N.J. June 26, 2002) (noting that "the possibility of abuse" is "acute" in the context of standing, where "the potential exists to circumvent the statute of limitations by filing putative class actions on behalf of nominal plaintiffs without standing solely to toll the limitations period until a suitable plaintiff can be found").

Here, Plaintiff and his lawyers are attempting to do precisely what this and many other Courts have expressed concern about: file a putative class action on behalf of a nominal plaintiff to toll the limitations period until a "better" putative class representative can be found. Plaintiff is a well-known serial litigant, who been involved in at least 35 separate lawsuits, including other cases involving labeling and trans fat. Public records indicate Plaintiff has been a party in at least the following legal actions: *Walker v, Viacom et al.*, 04-5013 SI (N.D. Cal.); *Walker v. Stonebridge Investment Gp*., 13-cv-1963-MCE-AC (E.D. Cal.); *Walker v. Urban Land Dev*., No. FSC059954 (Solano Super. Ct.); *Walker v. Ali Chabane*, No. FSC058958 (Solano Super. Ct.); *Walker v. Lisa York-Summerville*, No. FSM136401 (Solano Super. Ct.); *Walker v. Crescent Processing*, No. FSC058753 (Solano Super. Ct.); *Walker v. Moorhead*, FSC057325 (Solano Super. Ct.); *Walker v. Nolo, Inc.*, No. RH10525580 (Alameda Super. Ct.); *Walker v. A-1 Storage*, No. S578984 (San Diego Super. Ct.); *Walker v. Sims*, J-0204-CV-900098; J-0204-CV-900085 (Maricopa Super. Ct.); *Walker v. Dick's Truck Repair*, No. J-0204-CV-940003 (Maricopa Super. Ct.); *Shil Kothari v. Troy Walker, et al.*, No. FCM1144186 (Solano Super. Ct. 2014); *Benjamin Ng v. Troy Walker*., No. FCM136618 (Solano Super. Ct. 2013); *Jackson Stieb v. Troy Anthony Walker*, No. FCM132578 (Solano Super. Ct. 2012); *Renee Counts Walker v. Troy Anthoney (sic) Walker*, No. FFL119393 (Solano Super. Ct. 2012); *Heather Crow v. Troy Walker*, No. FCM120594 (Solano Super. Ct. 2011); *Shawn Rogers v. Troy Walker*, No. FCM108930 (Solano Super. Ct. 2009); *Pac. Publishing v. Troy Walker*, No. FCM109867 (Solano Super. Ct. 2009); *Soloman Peralta v. Troy Walker, Renee Walker*, No. FCM108990 (Solano Super. Ct. 2009); *Greystar Mgmt. v. Troy Walker*, No. FCM103552 (Solano Super. Ct. 2008); *PCK Mgmt. v. Troy Walker*, No. FSC054223 (Solano Super. Ct. 2008); *Sam Patel v. Troy Walker*, No. FSC054249 (Solano Super. Ct. 2008); *Lana Vu v. Troy A. Walker*, No. FCM102560 (Solano Super. Ct. 2008); *Con Am Inc. v. Troy Walker*, No. FCM096931 (Solano Super. Ct. 2007); *Bay Homes Dev. v. Troy Walker, Renee Counts*, No. FCM086944 (Solano Super. Ct. 2004); *Jacqueline Lawrence v. Troy Walker*, No. FSC046832 (Solano Super. Ct. 2002); *Suisun Investors v. Troy Walker*, No. FCM072854 (Solano Super. Ct. 1999); *County of Solano v. T A Walker*, No. SF039087 (Solano Super. Ct. 1998); *Avco Fin. v. Troy A. Walker*, No. FS038835 (Solano Super. Ct. 1997); *County of Solano v. T.A. Walker*, No.

SF005410 (Solano Super. Ct. 1993); *County of Alameda v. Felicia Evans, Troy A. Walker*, No. 07FS05598 (Sac. Super. Ct. 2007); *Thomas Krenbeh v. Troy Walker*, No. US14264 (San Diego Super. Ct. 2006); *State Labor Commissioner v. Troy Walker*, No. IS10267 (San Diego Super. Ct. 2002); *County of San Diego v. Troy Walker*, No. DF160945 (San Diego Super. Ct. 2002); *County of San Diego v. Troy Walker*, No. DF133672 (San Diego Super. Ct. 2000); *State v. Troy Walker*, No. M-0741-2067025 (Maricopa Super. Ct. 1999).

In 2005 and 2008, Judge Illston dismissed two lawsuits in which Plaintiff demanded over $1,000,000,000 for supposedly inventing the cartoon character Sponge Bob Square Pants. *See Walker v. Hillenberg*, C 04-5013 SI (N.D. Cal. 2004) and No. C 06-4931 SI (N.D. Cal. 2006).

Plaintiff also served as the claimant for another trans fat suit brought by his lawyer, which was dismissed with prejudice by Judge White, *Walker v. ConAgra Foods, Inc*., No. C 15-2424 JSW (N.D. Cal. 2015), where he sought to make similar claims on behalf of "similarly situated" health conscious consumers of Crunch n' Munch ® Buttery Toffee Popcorn.

Under these circumstances, at the least, B&G Foods should be permitted to take discovery into whether Plaintiff has standing to assert his claim. At minimum, the Court should defer ruling on this motion until that discovery has taken place, so that B&G Foods may resolve any doubt as to Plaintiff's standing in this case, and thus whether the proposed amendment would be futile. This would be the most efficient way to proceed.

**C. Plaintiff Cannot Resuscitate Claims Dismissed with Prejudice**

Plaintiff's attempt to re-plead claims dismissed with prejudice is both untimely and substantively improper. Plaintiff does not seek relief under the appropriate rules (Rules 59 and 60) because the time for bringing such motions has long passed. Moreover, he has failed to make the showing that is required.

**1. Plaintiff's Motion Is Untimely**

"[O]nce judgment has been entered in a case, a motion to amend the complaint can only be entertained if the judgment is first reopened under a motion brought under Rule 59 or 60" of the Federal Rules of Civil Procedure. *Lindauer v. Rogers*, 91 F.3d 1355, 1357 (9th Cir. 1996). A dismissal with prejudice is a "judgment," requiring a plaintiff to "show that reopening of the

judgment is warranted under Rule 59 or 60 before seeking leave to amend under Rule 15." *PAMC, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, Case No. 2:18-cv-06001-SVW-AS, 2019 WL 2158229 *1 (C.D. Cal. April 12, 2019); *see also Swearingen v. Attune Foods, Inc.*, Case No. C 13-4541 SBA, 2015 WL 370167 *1 (motion challenging dismissal with prejudice properly considered as Rule 59 or 60 motion).

Plaintiff's motion does not cite to either Rule 59 or 60 or attempt to make the showing required by those rules. To begin, Plaintiff's motion is untimely under either rule. The Court dismissed Plaintiff's labeling claims over three years ago. A Rule 59 motion to alter or amend a judgment must be brought within twenty-eight days of the entry of judgment. Fed. R. Civ. P. 59(e). A Rule 60 motion for relief from judgment must be brought "within a reasonable time," generally "no more than a year after the entry of the judgment … ." Fed. R. Civ. P. 60(c)(1).

Reopening a judgment under either Rule 59 or Rule 60 is an extraordinary remedy to be used sparingly. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (Rule 59); *Lehman v. United States*, 154 F.3d 1010, 1017 (Rule 60). A Rule 59 motion may be granted if the court "is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999).

Plaintiff does not address this standard in his motion and fails to make the showing necessary for such relief. To the contrary, the ruling he seeks to set aside is more than three years old. Then he waited almost an entire additional year before seeking to set it aside. The timing requirements in Rule 59 and 60 exist to impose finality, end litigation of stale issues, and to prevent the very type of gamesmanship in which Plaintiff engaged. *See Lemoge v. United States*, 587 F.3d 1188, 1196–97 (9th Cir. 2009).

Further, even if he could timely invoke Rule 59 or 60, Plaintiff's motion still would fail. The reasons a Rule 60 motion may be granted are:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgement that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed R. Civ. P. 60(b).

The only basis Plaintiff has identified for setting aside the Court's judgment is that, after the Court dismissed the labeling claims, the Ninth Circuit held for the first time that state law claims contending that "0g Trans Fat" were misleading were not preempted. But for the reasons below, the Ninth Circuit's decision in *Kroger* does not salvage Plaintiff's labeling claims, and there is thus no "intervening change in controlling law" that warrants reopening the Court's judgment.

**2. Plaintiff's Mislabeling Claims Remain Barred under the Safe Harbor Doctrine**

In California, UCL and CLRA claims "are subject to the safe harbor doctrine, which precludes plaintiffs from bringing claims based on 'actions the Legislature permits.'" *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 183 (Apr. 8, 1999). Thus, for example, a claim that stating the net weight of a lip balm was misleading because not all of the balm was accessible was barred, because "[b]oth federal and California law affirmatively require cosmetics manufacturers to include an accurate statement of the net weight of included cosmetic product." *Ebner v. Fresh, Inc.*, 818 F.3d 799, 804 (9th Cir. 2016).

In *Kroger*, the Ninth Circuit held that federal law did not preempt UCL and CLRA claims contending that "0g trans fat" claims were misleading when foods contained small amounts of trans fat.[3] *Kroger* was decided in 2018, three years after this case was filed and well after B&G Foods ceased marketing its products with the "0g Trans Fat" language. Prior to *Kroger*, the only Ninth Circuit opinion to address a "0g Trans Fat" claim was *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113 (9th Cir. 2012), which formed the basis of the Court's First Dismissal Order.

---

[3] *Kroger* did not decide whether "use claims," such as Plaintiff's sole surviving claim, were preempted, particularly in light of the FDA's decision to allow companies to take up to three years to remove PHOs from food after it determined that PHOs were no longer generally regarded as safe. *See* 906 F.3d at 772-73.

(Dkt. No. 42 at 5-6.) That opinion held that a "0g Trans Fat" statement was not misleading when the product contained less than 0.5 grams of trans fat, as federal regulations require this to be expressed as "0g". Indeed, the court read the federal regulations as mandating the use of zero when the amount of a nutrient was less than 0.5 grams. *Carrea*, 475 F. App'x at 115.

Thus, at the time the Plaintiff supposedly purchased the Ortega® taco shells, the Ninth Circuit had construed the applicable federal regulation as not merely permitting, but requiring use of "0g" whenever trans fat was present in an amount less than 0.5 grams. As the Ninth Circuit then explained, "Carrea seeks to enjoin and declare unlawful ***the very statement that federal law permits and defines***." *Id.* B&G Foods' pre-*Kroger* conduct falls within the safe harbor. Plaintiff has thus failed to show that the judgment should be reopened in light of any intervening change of law and this is a separate and independent reason to deny Plaintiff's motion.

## II. PLAINTIFF'S ATTEMPT TO PLEAD AROUND THE STATUTE OF LIMITATIONS DEFENSE IS IMPROPER

Plaintiff deliberately withheld his proposed amended complaint so that he could preview B&G Foods' arguments and try to address them—which his amendments fail to do.[4] Even if they did, this type of gamesmanship is a separate and independent reason to deny Plaintiff's motion. *AmeriscourceBergen*, 465 F. 3d at 954 (plaintiff's attempt to amend complaint "closely follow[ing]" a motion for judgment challenging one of plaintiff's theories was impermissible gamesmanship); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (impermissible gamesmanship to attempt to amend complaint late in litigation solely to interject new legal theory).

## III. PLAINTIFF UNDULY DELAYED SEEKING LEAVE TO AMEND

Plaintiff's motion should separately be denied because Plaintiff unduly delayed seeking leave. To determine whether a proposed amendment is made after undue delay, courts focus on whether the late amendment will cause prejudice to the opposing party. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). "Prejudice is heightened when a Plaintiff seeks to

[4] And as noted in Section I, Plaintiff Schier's attempt to plead her way out of the statute of limitations—namely, her allegations that she somehow bought the taco shells after they disappeared from store shelves—is far from plausible. This is proof positive that games, and not actual injury, are afoot.

amend a complaint late in litigation." *Netbula, LLC v. Bindview Dev. Corp.*, No. C06-00711, 2007 WL 2221070 *4 (N.D. Cal. Aug. 2. 2007) (denying leave to amend complaint late in litigation to add new claims, new parties, and new factual allegations). Adding new parties late in litigation is particularly prejudicial. *Id.* Delaying as little as fourteen months may be undue if substantial pretrial work has already been completed. *Callan v. Amdahl Corp.*, Civ. No. C-94-0295, 1995 WL 261420 *5 (N.D. Cal. 1995); *see also Mende v. Dun & Bradstreet, Inc.*, 670 F.2d 12, 131 (9th Cir. 1982) (affirming denial of leave to amend where the motion was filed twenty-five months after the original complaint had been filed and where no new facts had been discovered).

Here, although the proposed new plaintiff must have purchased the products at issue before April 2015 (since they were thereafter reformulated and relabeled), Plaintiff did not seek leave to add the unnamed representative until August 21, 2019. Although the FDA determination occurred in May 21, 2018, Plaintiff waited until May 13, 2019 to inform the Court. Although *Kroger* was decided on October 4, 2018, Plaintiff waited until August 21, 2019 to seek leave to amend. This troubling pattern of delay is certainly undue.

Without any declaration or supporting evidence, Plaintiff argues that delay is not undue in this case because he only discovered the unnamed class representative through "investigation," and because the case was stayed following the First Dismissal Order. (Dkt. No. 61 at 3.) But Plaintiff offers no evidence or even explanation for why he did not notify the Court sooner of the FDA determination or the *Kroger* decision, other than that it was an "oversight." (*Id.*) This strains credulity, as Plaintiff's lawyers were also the lawyers for the plaintiff in *Kroger*, Plaintiff's lawyer personally lobbied the FDA during rulemaking (and lost), and Plaintiff is familiar with FDA rules and findings given the extensive citation to them in the Complaint.

Plaintiff's delay prejudices B&G Foods. The products and labels Plaintiff seeks to add back into the litigation have not been manufactured for four years. Plaintiff seeks to add claims going back to "2008," which is more than 10 years ago. (Borden Decl., Exs. 2, 3.) Personnel at the company responsible for those products have turned over and memories have faded. The Court has already twice ruled on B&G Foods' motion to dismiss, each time dismissing claims with prejudice, and yet Plaintiff proposes to reassert some of the very same claims that were dismissed with

prejudice years ago. After years have elapsed, B&G Foods should be permitted to trust in the finality of the Court's judgments. *See Roe v. White*, No. C 03-04035 CRB, 2009 WL 4899211 *3 (N.D. Cal. Dec. 11, 2009) (refusing to reopen judgment four years after the fact because doing so risks undermining the "interest of preserving the finality of judgments").

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's motion for leave to amend.

Dated: October 10, 2019

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By: */s/ Matthew Borden*
Matthew Borden

Attorneys for Defendants B&G Foods, Inc. and B&G Foods North America, Inc.